Maria Ester MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–04–010–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

March 9, 2006.

Rehearing Overruled Aug. 24, 2006.

Joseph A. Connors, III, McAllen, Laura Martinez Colunga, Edinburg, for appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Sommer L. Hoffman, Asst. Dist. Atty., Edinburg, for appellee.

Before Chief Justice VALDEZ and Justices CASTILLO and GARZA.

## OPINION

Opinion by Justice CASTILLO.

A jury convicted appellant Maria Ester Martinez of theft by deception by a public servant.[1] The trial court imposed a thirty-

---

1. The information alleged that Martinez unlawfully, intentionally, and knowingly appropriated by acquiring and exercising control over property, namely United States currency of the value of $50.00 but less then $500.00, from Carmen Ocanas Lerma, the owner, without her effective consent by deception with intent to deprive the owner of the property while Martinez was a public servant with possession, custody and control of the property by virtue of her status as a public servant. *See* TEX. PEN.CODE ANN. § 31.03(f) (Vernon Supp.2005).

day sentence in jail, suspended the sentence and ordered community supervision for ninety days, ordered $298.85 restitution, and assessed a $300 fine. Martinez raises five issues on appeal.[2] Because we find the evidence factually insufficient to sustain the conviction, we reverse and remand for a new trial.

## I. BACKGROUND

Martinez was the cafeteria manager at Morris Middle School ("MMS") in the McAllen Independent School District ("MISD"). One of her duties was to count proceeds from cafeteria and snack bar sales, complete a deposit slip, and turn over the money for safekeeping in, among other places, a secured, marked bank bag. One such deposit was twenty dollars short of the $298.85 Martinez indicated on the deposit slip. The police officer employed by the district, who attempted the deposit, returned the bag and its contents to the school. In the presence of a cafeteria employee, Martinez located the missing twenty-dollar bill on her desk. Martinez opened the returned bag, counted the deposit, added the twenty dollars, locked the bag, and took the bag to the front office. The $298.85 deposit did not reach the MISD bank account assigned to MMS.

The State filed an information in the county court at law, charging Martinez with theft by deception by a public servant, a class A misdemeanor.[3] After entering a judgment of conviction and sentence, the trial court denied Martinez's motion for new trial. This appeal ensued.

## II. JURISDICTION[4]

By her first issue, Martinez asserts that article 4.05 of the Texas Code of Criminal Procedure vested exclusive subject matter jurisdiction in the district court over an offense charging her with "official misconduct" for theft as a public servant.[5] Tex.Code Crim. Proc. Ann. art. 4.05 (Vernon 2005). The State responds that article

2. We number the issues in the same order as Martinez listed them in the table of contents in her appellate brief. By her first issue, she asserts that the county court at law lacked jurisdiction because the district court has exclusive original jurisdiction of misdemeanors for theft by a public servant. By her second issue, Martinez maintains that the trial court erred in sustaining the State's objection to "worthy of belief" questions posited to a defense witness. By her third issue, Martinez asserts that the trial court reversibly erred by denying her requested jury instruction on her mistake of fact defense. By her fourth and fifth issues, respectively, Martinez asserts the evidence was legally and factually insufficient to support a conviction of theft by deception because the State failed to prove the essential elements of deception and consent. We address the issues in the order we consider dispositive. See Tex.R.App. P. 47.1.

3. Section 31.03(f)(1) of the Texas Penal Code states:
(f) An offense described for purposes of punishment by Subsections (e)(1)-(6) is increased to the next higher category of offense if it is shown on the trial of the offense that:
(1) the actor was a public servant at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of his status as a public servant;
Tex. Pen.Code Ann. § 31.03(f)(1) (Vernon Supp. 2005).

4. Martinez raises the question of jurisdiction of the convicting court for the first time on appeal, which she is entitled to do. See Gallagher v. State, 690 S.W.2d 587, 588 (Tex. Crim.App.1985) (en banc).

5. "District courts and criminal district courts shall have original jurisdiction in criminal cases of the grade of felony, of all misdemeanors involving official misconduct, and of misdemeanor cases transferred to the district court under Article 4.17 of this code." Tex. Code Crim. Proc. Ann. art. 4.05 (Vernon 2005).

5, section 8 of the Texas Constitution [6] and section 4.07 of the code of criminal procedure [7] allow concurrent original jurisdiction in both the district and county courts over misdemeanors involving public servants.[8]

### A. "Official Misconduct"

■ We must determine whether the misdemeanor charged in this case was exclusively a district court offense. Martinez asserts that the information alleges an "official misconduct" offense. "Official misconduct" is now styled as "abuse of official capacity." TEX. PEN.CODE ANN. § 39.02 (Vernon 2003). A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly (1) violates a law relating to the public servant's office or employment, or (2) misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment. *Id.* "For a criminal act to constitute official misconduct, it must be both willful and related to the duties of the defendant's office." *State v. Hall,* 829 S.W.2d 184, 188 (Tex.Crim.App.1992); *see Emerson v. State,* 727 S.W.2d 267, 268–69 (Tex.Crim.

App.1987) (en banc); *Gallagher v. State,* 690 S.W.2d 587, 593 (Tex.Crim.App.1985); *Robinson v. State,* 470 S.W.2d 697, 699 (Tex.Crim.App.1971) (construing predecessor statute).

In general, district court jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies," except in cases where the law confers jurisdiction "on some other court" or tribunal. TEX. CONST. art. V, § 8. The specific grant of jurisdiction for an offense alleging official misconduct is found in article 4.05 of the code of criminal procedure, which vests district courts with jurisdiction "in criminal cases of the grade of felony, and of all misdemeanors involving official misconduct." TEX.CODE CRIM. PROC. ANN. art. 4.05 (Vernon 2005). Thus, a district court has no jurisdiction over misdemeanors, except (1) those involving official misconduct, or (2) where the law confers jurisdiction on some other court. *Id.;* TEX. CONST. art. V, § 8.

### B. Classification of an Offense Involving a "Public Servant"

The information alleged theft by deception by a public servant, a violation of section 31.03(f)(1) of the penal code.[9] As

---

6. Article 5, section 8 of the Texas Constitution states, "District court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8.

7. Article 4.07 of the Texas Code of Criminal Procedure states, "The county courts shall have original jurisdiction of all misdemeanors of which exclusive original jurisdiction is not given to the justice court, and when the fine to be imposed shall exceed five hundred dollars." TEX.CODE CRIM. PROC. ANN. art. 4.07 (Vernon 2005).

8. The State does not argue that article 4.05 does not apply; rather it maintains that, when article 4.05 is read in conjunction with the "other laws" exception under Texas Constitution ART. V, § 8, TEX. CODE CRIM.PROC.ANN. article 4.07 granted the county court jurisdiction.

9. Martinez was charged with theft by deception by a public servant. *See* note 1; *see also* TEX. PEN.CODE ANN. § 31.03(f)(1) (Vernon Supp. 2005). "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties including: (a) an officer, employee, or agent of government; (b) a juror or grand juror; (c) an arbitrator, referee, or

in all theft cases, the amount alleged stolen controls the classification level of the offense. TEX. PEN.CODE ANN. § 31.03(e) (Vernon Supp.2005). Here, the alleged amount is "$50 or more but less than $500." The offense is a class B misdemeanor if the value of the property stolen is $50 or more but less than $500. TEX. PEN.CODE ANN. § 31.03(e)(2)(A)(i) (Vernon Supp.2005). However, because the information alleges an offense by a "public servant," the classification is elevated to the next higher category of the charged offense. TEX. PEN.CODE ANN. § 31.03(f) (Vernon Supp.2005). Thus, section 31.03(f)(1) governs and the Class B category is increased to the next higher category of the offense, namely, Class A. *Id.*

### C. Jurisdiction Analysis

■ By its plain terms, the information alleged theft by deception by a public servant.[10] The statutory construct in penal code section 31.03(f) contemplates an increase in the category of offense because the accused is a charged as a public servant.[11] The information sufficiently alleged theft by deception by a public servant, a

Class A misdemeanor.[12] *See* TEX.CODE CRIM. PROC. ANN. arts. 21.21, 21.23 (Vernon 1989); *see also id.* art. 21.11. Because the allegation in the information is a charge against a "public servant" and section 31.03(f)(1) applies, then under article 4.07, a county court has jurisdiction over a Class A misdemeanor information alleging theft by deception by a public servant. Accordingly, jurisdiction properly vested in the county court under article 4.07 and article V, section 8 of the Texas Constitution. We need not decide whether the complained-of conduct constitutes official misconduct because the second exception, granting jurisdiction if the law confers jurisdiction on some other court, applies and is dispositive. TEX. CONST. art. V, § 8; TEX.R.APP. P. 47.1. We overrule Martinez's first issue.

### III. LEGAL SUFFICIENCY

By her fourth issue, Martinez asserts that the evidence is legally insufficient to prove the essential elements of theft by deception by a public servant. The State counters that the evidence is legally sufficient to sustain the conviction.

---

other person who is authorized by law or private written agreement to hear or determine a cause or controversy; (d) an attorney at law or notary public when participating in the performance of a governmental function; (e) a candidate for nomination or election to public office; or (f) a person who is performing a governmental function under a claim of right although he is not legally qualified to do so. TEX. PEN.CODE ANN. § 1.07.(41) (Vernon Supp.2005). The parties do not dispute that Martinez was charged as a "public servant."

**10.** Our Legislature has defined the elements of an offense as the forbidden conduct, the required culpability, any required result, and the negation of any exception to the offense. TEX. PEN.CODE ANN. § 1.07(a)(22) (Vernon Supp.2005). Jurisdiction is not an element of an offense. *State v. Mason,* 980 S.W.2d 635, 641 (Tex.Crim.App.1998) (The concept of element of an offense "does not include every

issue to which the State has the burden of proof; it does not include, for example, venue or jurisdiction." (citation omitted)).

**11.** Martinez did not object on grounds that the information alleged the essential elements of an official misconduct offense to allow the trial court the opportunity to decide issues as to the sufficiency of the allegations or to effect a pretrial transfer to district court if it found grounds to do so. *See* TEX.CODE CRIM. PROC. ANN. arts. 21.29, 21.30 (Vernon 1989).

**12.** We also need not decide whether, in a theft by deception offense involving allegations against a public servant, a district court would be a court of competent jurisdiction under article 4.05 of the code of criminal procedure. TEX.CODE CRIM. PROC. ANN. art. 4.05 (Vernon 2005); *see State v. Hall,* 829 S.W.2d 184, 188 (Tex.Crim.App.1992) (en banc).

### A. Scope and Standard of Review

■ A legal sufficiency challenge requires us to review the relevant evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003) (en banc). This standard is designed to give full play to the jury's responsibility fairly to draw reasonable inferences from basic facts to ultimate facts. *See Sanders v. State*, 119 S.W.3d 818, 820 (Tex.Crim. App.2003). The standard is the same for both direct and circumstantial evidence cases. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App.2004); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex.Crim.App.1999).

■ We consider all the evidence that sustains the conviction, whether properly or improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App.2001) (citing *Garcia v. State*, 919 S.W.2d 370, 378 (Tex.Crim.App.1994) (en banc)); *see Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim.App.2004). Similarly, we consider all the evidence that sustains the conviction, whether submitted by the prosecution or the defense, in determining the legal sufficiency of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000) (en banc); *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App.1993) (en banc). In this review, we are not to reevaluate the weight and credibility of the evidence; rather, we act only to ensure that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993) (en banc); *see King*, 29 S.W.3d at 562. We are mindful that every fact need not point directly and independently to the accused's guilt. *Vanderbilt v. State*, 629 S.W.2d 709,

716 (Tex.Crim.App.1981). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Id.; Beardsley v. State*, 738 S.W.2d 681, 685 (Tex.Crim.App.1987) (en banc).

■ We measure the legal sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). This standard of legal sufficiency ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime, rather than a mere error in the jury charge submitted. *Id.* If we reverse a criminal case for legal insufficiency, we reform the judgment of conviction to reflect conviction for a lesser offense only if a jury charge on the lesser offense was either submitted or requested, but denied. *Collier v. State*, 999 S.W.2d 779, 782 (Tex.Crim.App.1999). Otherwise, we vacate the judgment of conviction for legal insufficiency and order a judgment of acquittal. *Swearingen*, 101 S.W.3d at 95.

### B. Elements of Theft by Deception

The information charged Martinez with theft of U.S. currency by deception by a public servant. The hypothetically correct jury charge against which we measure the sufficiency of the evidence would ask the jury if Martinez, (1) on or about August 27, 2002, (2) unlawfully appropriated U.S. currency (3) with the intent to deprive (4) Carmen Ocanas Lerma, the owner, of the property (5) by deception (6) while acting as a public servant and (7) while in possession of the property by virtue of her public servant status. *See* TEX. PEN.CODE ANN. § 31.03(f)(1) (Vernon Supp.2005).

■ "Appropriate" means to bring about a transfer of title or other non-

possessory interest in property or to acquire or otherwise exercise control over property. *See* TEX. PEN.CODE ANN. § 31.01(4)(B) (Vernon Supp.2005). Appropriation must be accompanied by the specific intent to deprive the owner of property. *Mills v. State*, 722 S.W.2d 411, 415 (Tex.Crim.App.1986). The penal code defines several ways in which an appropriation is unlawful, including "without the owner's effective consent." TEX. PEN.CODE ANN. § 31.03(b)(1), § 31.01(4) (Vernon Supp.2005); *Stockman v. State*, 826 S.W.2d 627, 632 (Tex.App.-Dallas 1992, pet. ref'd). Thus, the crucial element of theft is the deprivation of property from the rightful owner, without the owner's consent, regardless of whether the defendant at that moment has taken possession of the property. *Stewart v. State*, 44 S.W.3d 582, 589 (Tex.Crim.App.2001) (en banc). Consent is not effective if induced by deception or coercion. TEX. PEN.CODE ANN. § 31.01(3)(A) (Vernon Supp.2005). Section 31.01(1) of the penal code contains five definitions of "deception." *Id.* § 31.01(1). "Deception" means, among other things, creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true.[13] *Id.* § 31.01(1)(A). "Deprive" means to withhold property from the owner permanently. *Id.* § 31.01(2)(C). The intent to deprive is determined from the words and acts of the accused. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim.App.1981); *Roberson v. State*, 821 S.W.2d 446, 448 (Tex. App.-Corpus Christi 1991, pet. ref'd). "Effective consent" includes consent by a person legally authorized to act for the owner.

TEX. PEN.CODE ANN. § 31.01(3) (Vernon Supp.2005). Consent is not effective if induced by deception. *Id.* § 31.01(3)(A). Lack of consent and intent to deprive may be shown by circumstantial evidence. *Griffin*, 614 S.W.2d at 159.

### C. The Record

Generally, Martinez asserts that the evidence is legally insufficient to sustain each of the elements of the offense of theft by deception by a public servant. However, in particular, Martinez challenges the elements of (1) ownership and (2) intent to deprive by deception. *See* TEX.R.APP. P. 38.1(g), (h). We turn to the record evidence and, based on Martinez's legal sufficiency challenge, we review the evidence in the light most favorable to the verdict. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

Martinez testified on her own behalf and denied culpability. She was the cafeteria manager at MMS ultimately responsible for the cafeteria's daily deposits of proceeds from cafeteria and snack bar sales. She was assigned three bank bags for the deposits, numbers 2116, 2117, and 2119. Only Martinez and the bank had the keys to the bags assigned to her. On August 27, 2002, consistent with her employment duties, she completed a deposit slip in the amount of $298.85 for proceeds of cafeteria sales. She put one copy of the deposit slip with the money into the locked bank bag and it was delivered to the front office. Once the cafeteria deposit bags and other office deposit bags were logged in at the office, they were kept locked in a box, in a locked cabinet, in a locked office, until picked up by a school district police officer

---

**13.** When relevant at all in a theft prosecution, "deception" goes to the nature of the conduct and becomes part and parcel of the circumstances surrounding the conduct of the accused so as to render consent to the particular appropriation of property ineffective, and to provide evidence of the accused's knowledge that consent was, in fact, ineffective. *See Skillern v. State*, 890 S.W.2d 849, 871 (Tex.App.-Austin 1994, pet. ref'd).

and taken to the bank. Martinez understood that a police officer was assigned to pick up the bags from the school and deliver them to the bank. After a bank teller, Marisol Ozuna, determined the deposit to be short by twenty dollars and notified her of the shortage, Martinez requested Ozuna return the deposit to her. Martinez had located the twenty-dollar bill under some papers on her desk, while counting another deposit. She placed the twenty-dollar bill in the petty cash fund.

On August 29, 2002, the office secretary, Velma Cruz, advised Martinez that a bank bag with money was in Cruz's office. Martinez obtained bank bag 2119 and walked to the cafeteria to ask a cafeteria employee, Mirthala Zuniga, to witness the recount of the bank bag funds. Zuniga, responsible for accounting daily cafeteria funds, accompanied her supervisor Martinez to Martinez's office. In Zuniga's presence, Martinez counted the deposit, confirmed the shortage, added the twenty-dollar bill previously found on her desk, placed the money in the bag, and locked the bag. Martinez testified that, as Zuniga left the office, Martinez headed toward the front office and the locked room. Martinez further testified that, on August 29, 2002, she walked out of her office with two bank bags. One contained the corrected August 27, 2002, deposit, number 2119, and the other contained the August 29, 2002, daily deposit, number 2116. She located and found an authorized person with a key to unlock the secured area and unlock the secured filing cabinet that contained the red tool box that would hold the deposit bags. Martinez identified assistant principal Marie Riley as the authorized person present in the secured area.[14] Martinez testified that, as she proceeded to log the bags under standard procedure, Officer Dagoberto Rodriguez, the MISD police officer in charge of transporting deposits, asked her to combine the deposits into one bag to avoid his carrying multiple bags. Martinez complied. Martinez testified that bank deposit bag number 2119 contained both deposits. Martinez further testified that the last time she saw the deposit was on August 29, 2002, when she left the deposit with Officer Rodriguez in the presence of assistant principal Riley.

Martinez acknowledged that she provided the following written statement, admitted in evidence as part of the investigation of the missing funds:[15]

> The bank called me August 28, 2002 mid-morning to inform me that the bank deposit for August 27, 2002 was incorrect. The clerk asked me if she was to make the deposit or return it back for correction. I then informed her to send it back to me. On August 29, 2002, I brought is [sic] my daily deposit. I then return later to turn in the corrected deposit for the 27th. The officer was picking up the daily deposits and had already sign [sic] for the bags. He told me to open the bag he had and place the August 27th corrected deposit in the bag, which contained the August 29, 2002 deposit. I did this action in front of him and the vice-principal, Mrs. Riley. Therefore, there were two deposits in the same bag # 2119.

Further, Martinez testified as follows on cross-examination by the prosecutor:

Q: Since August of 2000, you had control over the bank bags and the money, is that right?

A: Yes, ma'am.

---

**14.** Testimony does not establish whether Riley was the individual who provided access to the secured area by unlocking both the office and the file cabinet.

**15.** The statement is defense exhibit 7B.

Q: And solely—solely you would be responsible for placing deposits into bank bags, locking them and taking them to the drop-off; is that right?

A: Yes. I was the one who put the deposit in the bag.

Officer Dagoberto Rodriguez testified that, on or about August 27, 2002, he was the sole officer who picked up all the deposit bags at MMS and delivered them to the bank. He admitted he was assigned to investigate the missing funds complaint and interviewed Martinez as part of his investigation. He testified that he was responsible for and picked up bags from all of the schools within the MISD. He denied he asked Martinez to combine the deposits into one bag. He testified that he met Martinez when the theft investigation ensued in December 2002. Officer Rodriguez further testified that he did not pick up any bags on August 29, 2002, the date Martinez maintained was the date the conversation between them occurred about the bank bags.

The jury heard that two logs admitted in evidence demonstrated the custody of the bank bags on the dates in question. The school log was located in the secured area in the front office at MMS. To reach that

log, the employee leaving a bank bag for pick-up by Rodriguez must obtain the assistance of the principal, the principal's secretary, or either of two assistant principals. These four individuals had keys to the locked office and to the locked file cabinet inside the office. Inside the locked file cabinet was a red tool box that held the bags for transport to the bank. Inside the red box was a log. The employee leaving the bank bag documented the date the bank bag was left, indicated the bank bag number, and initialed the form. The transport officer would then initial the log when the bank bag was picked up.

The jury heard that Officer Rodriguez maintained a separate police log in his police unit to document the location where bank bags were picked up, the bank bag numbers, and the time of pickup for transport. He maintained the police log on a daily basis and secured the bank teller's initials as confirmation of the total number of bags left with the bank. On a daily basis, Officer Rodriguez picked up bank bags from thirty-two campuses within the school district.

Admitted in evidence, the school log shows, in pertinent part:

| Date | [Bag No.] | Consignee | Receipted By |
|---|---|---|---|
| 8-26-02 | 2117 | Mirthala Zuniga [16] | DR |
| 8-27-02 | 2119 | Mirthala Zuniga | DR |
| 8-28-02 | 2116 | Mirthala Zuniga | DR |
| 8/29-02 | 2119 | Mary Ester Martinez | DR |
| 8/29-02 | 3385 | Velma Cruz | DR |
| 8/30-02 | 2117 | Mirthala Zuniga | DR |

Admitted in evidence, four daily police logs show that Officer Rodriguez picked up the following bank bags from the MMS campus: (1) on August 27, 2002, bank bags 2117 and 2119; (2) on August 28, 2002, bag 2116; (3) on August 29, 2002, no bank bags; and (4) on August 30, 2002, bags 2117, 2119, and 3385. The documents contain Officer Rodriguez's initials and initials

16. Martinez testified that she delegated, as needed, the process of leaving locked bank bags in the secured area to Zuniga.

Officer Rodriguez identified as bank tellers' initials.

Assistant principal Marie Riley testified she began work at MMS a few weeks before the incident involving the missing funds. She testified that cash handling procedures were in place governing Martinez's handling of the deposit in question. The procedure required Martinez to complete a log sheet when leaving a bank bag in the office. The persons with the key to the secured area were the principal, Riley, another assistant principal, and the bookkeeper; managers did not have a key. Managers had to ask either her or one of the other authorized persons to unlock the secured room, unlock the filing cabinet, and open the red box to put the bags in for pick up. Riley testified that the employee must complete the log and is never in the secured room alone. On the prosecutor's direct examination, Riley testified as follows:

Q: Would it be proper procedure for a manager to come in with a bank bag and for the armored car officer to walk in and ask them to open their bank bag and put their deposit in another bag?
. . .
A: No.... I would not allow it.

Riley further testified, "We don't combine money into one bag unless she brings it that way and I am not aware of it."

The bank teller, Marisol Ozuna, testified that she was the teller on August 27, 2002, who received the MISD deposit bags from Officer Rodriguez. When the deposit in bag 2117 was "worked" at the bank the next day, she found it to be twenty dollars short. Ozuna testified that the policy then in effect was for the teller to make all deposits if the amount on the deposit slip was within ten dollars of the actual amount counted in the bag. If a discrepancy was ten dollars or less, the bank made the deposit, noted it on the deposit slip, and sent the notated slip back to the school in the bag with the police officer. However, if a discrepancy was greater than ten dollars, the policy was to call the school contact marked on the outside of the bag and determine whether the school wanted the deposit made or returned to the school without being deposited so that the correction could be made. If the deposit was to be returned, the teller would put the deposit slip and money back in the bag and send it back to the school with the police officer. She did not recall this happening very frequently, but she remembered the discrepancy with the August 27, 2002, deposit and she remembered calling Martinez. Ozuna recalled that Martinez told her to return the deposit to the school and Ozuna complied. Officer Rodriguez further testified that he remembered a bag being returned from the bank to the cafeteria in August 2002, but he did not look in the bag. He did not recall if he gave the bag to Martinez.

Mirthala Zuniga testified that Martinez was in the cafeteria office with a bank bag and asked Zuniga to go to her office to recount the deposit. Zuniga observed while Martinez (1) opened the bank bag, (2) counted the deposit, (3) determined it was short twenty dollars, (4) added twenty dollars, (5) locked the bag, and (6) left to take the bag to the front office. Zuniga testified that sometimes she would take the bags to the office and sign them in.

Testimony conflicts as to what happened next to the bag. Martinez testified that, when she took bag 2119 to the front office to sign it in on August 29, 2002, Officer Rodriguez was already there to pick up the bags and he told her to put the deposit into one of the bags that he had already signed out. Officer Rodriguez did not recall picking up any bags on August 29, 2002. Assistant principal Riley testified, contrary to Martinez, that she did not

recall witnessing Martinez put a deposit into a bag already signed out by the officer. Evidence presented by both parties shows that the school's log, signed by Officer Rodriguez and Martinez shows Martinez logged in the bag in question on August 29, 2002. The police log reflects the date of pickup as August 30, 2002. The log does not show that he picked up any bags on August 29, 2002.

The deposit was never made or received into the MISD bank account assigned to MMS. Evidence reflects that the bank received three locked and sealed bags on August 30, 2002, but a deposit for $298.85 was not made. Two bank tellers testified as to the handling of the bank bags upon Officer Rodriguez's leaving them at the bank.

Marisol Ozuna, who returned the initial deposit to Martinez that was twenty dollars short, testified that she worked one of the bags Officer Rodriguez left on August 30, 2002. She confirmed that the initials on the police log indicate the bank received the bags for deposit. She confirmed that on August 30, 2002, the bank received bags 2117, 2119, and 3385. She worked two out of the three deposits made. The two deposits were in one bag. Ozuna testified she could not identify which bag she worked because the bank does not keep records. Bank teller Priscilla Barrera testified that she worked one bag that Officer Rodriguez left on August 30, 2002. She did not know which bag she worked. She testified she did not work the other two bags Officer Rodriguez left.

Bank deposit slips were admitted in evidence involving cafeteria funds. One bank deposit slip dated August 28, 2002, shows it was worked the same day. Two deposit slips dated August 30, 2002 indicate they were worked the same day. The jury heard that MISD police did not investigate events at the bank involving the three bags

Officer Rodriguez left at the bank on August 30, 2002, for funds deposit.

### D. Legal Sufficiency Analysis

We focus our analysis on the question of legal sufficiency of the evidence to support the challenged elements of the charged offense, namely, (1) ownership and (2) intent to deprive by deception.

### 1. Ownership

An "owner" is a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor. TEX. PEN.CODE ANN. § 1.07(a)(35) (Vernon Supp.2005). "Possession" means actual care, custody, control, or management. Id. § 1.07(a)(39). The issue of "ownership" goes to the scope of the property interest protected by the law and is intended to protect all ownership interests in property from criminal behavior. Freeman v. State, 707 S.W.2d 597, 603 (Tex.Crim.App.1986) (en banc). The Legislature, in defining the word "owner" as it did, clearly gave the word an expansive meaning: anyone having a possessory interest in the property through title, possession, whether lawful or not, or a greater right to possession to the property is an owner of the property. Id. In criminal law the issue of ownership, an element of the offense, is a question of fact for the jury to determine. See id. at 604; see also Villalobos v. State, 951 S.W.2d 232, 234 (Tex.App.-El Paso 1997, no pet.) (noting that the State is not required to explain why a particular person is named as owner in a theft indictment).

The information identifies Carmen Ocanas Lerma as the owner of the currency. Lerma was the Food Services Director for MISD and Martinez's superior. She testified as to the cash handling procedure in place for handling proceeds from

cafeteria sales and that the procedure governed Martinez. Accounting personnel reported the missing funds, and she pursued an investigation. Jose Perez, the MMS principal, testified that, while apprised of the missing funds because his campus was involved, he was not involved in the investigation. He identified Lerma as the district-wide supervisor for cafeteria operations. Martinez did not claim ownership in the proceeds of cafeteria sales.

A rational trier of fact could have found that Lerma, by virtue of her position, had a right to possession of the currency superior to that of Martinez, and thus, the evidence meets the statutory definition of "owner." TEX. PEN.CODE ANN. § 1.07(a)(35), (39) (Vernon Supp.2005). Moreover, to the extent Martinez exercised control over the property, the control was "unauthorized." *See Freeman,* 707 S.W.2d at 605. After viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt the essential element of ownership. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Escamilla,* 143 S.W.3d at 817.

### 2. *Intent to Deprive by Deception*

A person acts intentionally, with respect to the nature or result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PEN.CODE ANN. § 6.03(a) (Vernon 2003). A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). The intent to deprive is determined from the words and acts of the accused. *Griffin,* 614 S.W.2d at 159; *Roberson,* 821 S.W.2d at 448.

While Martinez asserts that the State did not prove the essential elements of intent to deprive by deception, the State counters that the evidence shows Martinez did not take in the money, prepare the deposit, and send the money to the bank as she purported to do as part of her job description. The State's theory encompassed the statutory definition of "deception," namely, that Martinez created or confirmed by her conduct a false impression that the bag she turned in contained the corrected deposit. On that representation, she gained entry into the secured area, and, according to procedure, Officer Rodriguez transported the bag Martinez left. The corrected deposit remains missing.

Viewed in the light most favorable to the verdict, the evidence shows that Martinez was the last person with the bag with the corrected deposit. Zuniga observed her leave the office with the bag. Martinez logged in one bag in the secured red box. If Martinez left her office with two bags as she testified, she diverged from her usual procedure by opening a locked bag and combining the deposits. Officer Rodriguez denied the August 29, 2002 encounter in which Martinez claimed he requested she combine the two bags. Assistant principal Riley testified she would not have allowed combining the contents of bank bags, the procedure Martinez described, had it occurred in Riley's presence.

The police log corroborates Officer Rodriguez's testimony that he did not pick up bank bags on August 29, 2002. The school log shows that, on August 29, 2002, Martinez was the sole individual to place a bank bag in the secure area. She secured bank bag 2119. The police log shows that bag 2119 was delivered to the bank and, by the initials from a bank teller on the log, was received by the bank. The corrected deposit Martinez claimed was in the bag was never found.

Martinez testified that the this was the first time during her term as food service manager [17] that (1) a shortage occurred in a deposit she counted, (2) a shortage was detected in a bank deposit, (3) a deposit was returned for that reason, (4) a deposit was returned at her request, (5) she met the deposit transport officer in the course of her seventeen months as a manager, (6) combined the contents of two bank bags, and (7) a deposit was not made because it was missing.

■■■ We are mindful that the jury is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim. App.1992) (en banc); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991) (en banc). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843.

■■■ The evidence used to convict Martinez was solely circumstantial. However, the lack of direct evidence is not dispositive of the issue of guilt. *Guevara*, 152 S.W.3d at 49. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Id.* Circumstantial evidence alone is sufficient to establish guilt. *Id.*

By its verdict, the jury rejected Martinez's claim of innocence. We assume that the jury resolved conflicts in testimony, weighed the evidence, and drew reasonable inferences in the manner that supports the verdict. *Griffin*, 614 S.W.2d at 159. In reaching its decision, the jury could have inferred that the incidents that occurred for the first time affecting solely the missing deposit and leading to its disappearance were not a mere coincidence. Thus, viewing the evidence in the light most favorable to the verdict and measuring it against the essential elements of theft by deception as defined in a hypothetically correct jury charge, we conclude that a rational jury could have found the following: (1) Martinez appropriated the currency at some time after leaving the cafeteria and before entering the front office; (2) she acquired or otherwise exercised control over the money since she was the only one with the key and she could have opened the bag in the hallway; (3) Martinez intended to deprive the owner of the currency knowing it was not hers to keep; (4) she either did not place a deposit in the bag, did not have two bags, or did not combine deposits in one bag; and (5) she stated that there was an extra deposit in the bag when there was not. Zuniga testified that Martinez walked out of the office with one bag.

On this record, we cannot say that a jury would have unfairly or irrationally inferred that Martinez appropriated the currency with the specific intent to deprive the owner of it by deception. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Sanders*, 119 S.W.3d at 821; *Malik*, 953 S.W.2d at 240; *Griffin*, 614 S.W.2d at 159. We conclude that Martinez's acts were sufficient evidence from which a rational trier of fact could have inferred an intent to deprive by deception as the term is defined in section 31.01(1)(A) of the penal code. Tex. Pen.

---

**17.** Documents admitted in evidence show Martinez was promoted to the position on September 5, 2000. Martinez testified her last work day was March 24, 2003.

CODE ANN. § 31.01(1)(A) (Vernon Supp. 2005). This is not to say that the evidence was uncontested or free from contradiction. However, the jury was the sole trier of facts. We conclude that the evidence was such that a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Escamilla*, 143 S.W.3d at 817. We overrule Martinez's fourth issue.

## IV. FACTUAL SUFFICIENCY

By her fifth issue, Martinez asserts that the evidence is factually insufficient to prove any of the essential elements of theft by deception by a public servant. The State counters that the evidence is factually sufficient to sustain the conviction.

### A. Scope and Standard of Review

 We are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of the charged offense. *Johnson v. State*, 23 S.W.3d 1, 6–7 (Tex.Crim.App. 2000) (en banc). The Texas Court of Criminal Appeals has restated the factual sufficiency standard of review to provide that there is only one question to be answered in a factual sufficiency review: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim.App.2004). However, there are two ways in which the evidence may be insufficient. *Id.* First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. *Id.* Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. *Id.* Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-

reasonable-doubt standard could not have been met, so the guilty verdict should not stand. *Id.* A clearly wrong and unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim.App.2005) (designated for publication).

 When the State bears the burden of proof, the proof of guilt is factually insufficient if it is so obviously weak as to indicate that a manifest injustice has occurred or if it is greatly outweighed by contrary proof. *Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003). In determining the factual sufficiency of the elements of the offense, we view all the evidence neutrally, not through the prism of "the light most favorable to the prosecution." *Johnson*, 23 S.W.3d at 6–7 (citing *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996)). However, we approach a factual sufficiency review with appropriate deference to avoid substituting our judgment for that of the fact finder. *Id.* Our evaluation should not intrude substantially on the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Id.* We must consider the most important evidence that the appellant claims undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003). Every fact need not point directly and independently to the accused's guilt. *Vanderbilt*, 629 S.W.2d at 716.

 In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if "proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Vodochodsky v. State*, 158 S.W.3d 502, 510

(Tex.Crim.App.2005) (citing *Johnson*, 23 S.W.3d at 11; *Goodman v. State*, 66 S.W.3d 283, 285–86 (Tex.Crim.App.2001)); *Zuliani*, 97 S.W.3d at 593–94. In the opinion, we "show our work" when we consider and address the appellant's main argument for urging insufficiency of the evidence. *See* Tex.R.App. P. 47.1; *Sims*, 99 S.W.3d at 603 ("[A] proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal."). This practice benefits the parties, maintains the integrity of the justice system, and improves appellate practice. *Id.*

 This Court measures the factual sufficiency of the evidence against a hypothetically correct jury charge. *Adi v. State*, 94 S.W.3d 124, 131 (Tex.App.-Corpus Christi 2002, pet. ref'd). If we reverse a criminal case for factual insufficiency, we vacate the judgment of conviction. *Clewis*, 922 S.W.2d at 133–34. We remand for a new trial a criminal case reversed for factual insufficiency so a second jury may have the chance to evaluate the evidence. *Swearingen*, 101 S.W.3d at 97.

### B. The Record

Contrary evidence shows that Lerma, Martinez's superior, addressed the missing funds by memorandum dated December 2, 2002. In that document, admitted in evidence, Lerma states in part relevant to our analysis:

> There is a matter of a missing deposit from Morris Middle School Cafeteria. It is in the amount of $298.85. The deposit is for August 27, 2002. It was somehow misplaced in transit from the school to the bank.

For purposes of our factual analysis, we look to events occurring from the time Martinez logged bag 2119 to the bag's transit from the school to the bank. The school log reflects activity involving the three bank bags assigned to Martinez, numbers 2116, 2117, and 2119:

| | | | |
|---|---|---|---|
| 8–27–02 | 2119 | Mirthala Zuniga | DR |
| 8–28 | 2116 | Mirthala Zuniga | DR |
| 8/29 | 2119 | Mary Ester Martinez | DR |
| 8/29 | 3385 | Velma Cruz | DR |
| 8/30 | 2117 | Mirthala Zuniga | DR |

On the school log is a handwritten statement indicating, "Note: This date represents the day the deposit is placed in the red box and not the date it was picked up!" Officer Rodriguez testified that he penned the statement on the log because of statements he heard once he began his investigation of the missing deposit. Officer Rodriguez testified that his initials on the school log indicate that he picked up the bags. He also testified that he devised both logs used for transport of school deposits. He explained that he followed the forms used by a courier MISD previously used. On the school log, aside from the columns indicated above, are two other columns. One indicates, "said to contain value of," and the other, "bag returned." No one leaving bank bags in the secure room completed the columns; thus, on the entire log, the column is blank.

Officer Rodriguez's police logs for the same period reflected in the school log above show the following for Morris Middle School pick-ups:

| | #Bags to schools | Schools | Amount of Bags | Time Picked Up |
|---|---|---|---|---|
| 8/27/02 | 2 | Morris | 2117, 2119 | 14:12 |
| 8/28/02 | 1 | Morris | 2116 [18] | 14:15 |
| 8/29/02 | 0 | Morris | | |
| 8/30/02 | 3 | Morris | 2117, 2119, 3385 | 14:14 |

18. A bank deposit slip dated August 28, 2002, shows a deposit was made on the same day

Officer Rodriguez testified that, when a bank bag was left in the red box after he was at the school, then the bag would remain in the red box until his return the next day.

Officer Rodriguez confirmed that he was at the school on August 29, 2002, the date Martinez testified she saw him. On direct examination, he testified as follows:

Q: Okay. And now explain to us once again how August 30th it shows one number here and you pick up three bags.

A: Again, apparently these bags were placed in the red box. On August 29th, they were placed in the red box after I had gone by that school already.

Officer Rodriguez did not recall seeing Martinez that day. He testified he met her on December 6, 2002, when he interviewed her as part of the investigation of the missing funds. He testified that as part of his investigation, he spoke with assistant principal Riley, and Riley did not remember the incident Martinez described involving the officer's request that she combine the deposits. He denied he requested that Martinez open bag 2119 and combine the funds. Assistant principal Riley did not deny that she was the authorized person who opened the secured room and the filing cabinet for Martinez on that day. Martinez recollected that Riley might not recall the events because a student altercation occurred that day.

Officer Rodriguez also testified that as a matter of procedure, when he was "handed the bags," at the school, he would tug on them to make sure they were locked. Thus, the record demonstrates that someone "handed" him the two cafeteria bags in question, 2117 and 2119, before transport

for the cafeteria fund. That deposit accounts for bag 2116, which Officer Rodriguez testi-

to the bank. However, the evidence does not establish that person's identity. Officer Rodriguez testified that the bank teller's initials at the bottom of each police log page verified that the bags were both received and secured stating, "They count the bags and they check the bag numbers and they check them that they are secured and that they sign—they sign off on it, on the bottom of the—of my log." The police logs reflect initials at the bottom of each page. However, bank teller Ozuna testified that, upon receipt of a copy of the police log and the bags from the transport officer, the "tellers would verify that all the bags ... [brought] in corresponded to whatever bags were in the box, if they— matched—." Ozuna testified as follows on further direct examination:

Q: Okay. And so you would go through and double-check that you received those bags; is that correct?

A: Yes, ma'am.

Q: Would you do anything else with the bags?

A: Huh-uh.

Q: Nothing else is done with the bags as far as ... receiving them from the armored car driver?

A: After we've verified everything, of course we start working bags, start working bags.

Q: Okay. What is the bank's policy, procedure, if there is a bag that's open or if there's a bag that looks tampered with?

A: We notify the school or the person whose name appears on the bag.

fied he picked up on August 28, 2002.

Q: Okay. And what else is done, if anything, at that time that you notice a bag may be opened or tampered with?

A: After we've called the person, you know, if everything—if the deposit's fine and everything, nothing. If it occurs that there's something missing or short or over, of course the person whose name appears on the bag tells us either they want for us to show the deposit over or short or they want for us to send the bag back to them.

Ozuna did not testify that the bank confirmed, upon receipt, that the bags were secured. When re-called to testify, Ozuna stated that the initials on the police log verify "the bags' numbers and the total number of bags.... As soon as we verify them, we initial off on them on Mr. Rodriguez's ... copy.... That's an initial made by one of the tellers that she verified that we received the bags that are stated on ... the form." Thus, the initials verified receipt and quantity of the bags.

Bank teller Ozuna also testified that the bank received three bags on August 30, 2002, and she worked two deposits dated August 30, 2002. Both deposits were from one bag. She did not know which of the three bags received that day she worked. She testified on cross-examination as follows:

Q: Three bags came in that day from August 30th according to the receipts you've been looking at, 2117, 2119 and 3385. The two deposit slips you just spoke of that you worked out ... do you remember which bag they came out of?

A: No, sir, I sure don't.

Q: And y'all don't keep those kind of records at the bank, do you?

A: No, sir.

Q: And the other two bags, did you work them?

A: No, sir.

Q: When bags come from various school campuses at McAllen ISD, do you ever open a bag and it ends up there's nothing in it?

A: Yes, sir.

Q: What do you do then with an empty bag?

A: When there's nothing in it, we just send it back.

Q: You make any phone calls to ask why did you send me an empty bag?

A: We don't. Just assuming that they probably, you know, forgot to keep it.

She further testified that, even if a deposit slip is the sole item in the bank bag, "We would probably send it back, just, you know, assuming they're thinking that they probably just forgot to get the [money], maybe forgot to take [the deposit slip] out of the bag." Importantly, Ozuna earlier testified that the bank policy required that the teller call the school contact identified on the bag if the deposit slip showed a discrepancy of greater than ten dollars.

Bank teller Barrera testified that the cut-off time for deposits is 2:30 p.m.; after that time, the deposit is credited for the next business day. She testified that on Saturday, August 31, 2002, she worked two cafeteria deposit slips dated August 29, 2002.[19] On direct-examination, the following exchange ensued:

19. Martinez testified that defense exhibit 47 shows her writing "$43.50" and "317.50" as cafeteria proceeds for August 29, 2002. Admitted as State's exhibit 4, two deposit slips dated August 29, 2002, correspond with the amounts, respectively. Barrera testified that she worked the deposits on Saturday, August 31, 2002. For August 29, 2002, the school log shows that Martinez logged in bag 2119 and, thereafter, office secretary Vilma Cruz logged in bag 3385.

Q: Now, did you receive those deposits out of a bank bag like this?

A: Yes, ma'am.

Q: Okay. Now ... there are several bags that are brought in from high school.

A: Uh-huh.

Q: Would you have worked deposits out of a different bag or the same bag as another teller?

A: No. We all worked out of one bag. Back then we would work out of—we would help each other out, but on that day I didn't. I worked only the bag that I had ... sealed—I locked it up and we put it in the basket.

Q: Okay. So after you finished working that bag you put it in the—

A: Right.

Q: —in the bag?

A: Uh-huh.

Q: Had anybody else worked that bag before you?

A: No, ma'am.

Q: Okay. So if another teller worked another bag, you didn't work that same bag?

A: Not that day.

On cross-examination, Barrera testified as follows:

Q: How many bags from Morris Junior High School came to you, to work at your teller window, that day, on Saturday?

A: On Saturday, just that one.

Barrera testified that she did not know who worked the other bags.

### C. Factual Sufficiency Analysis

 Viewed in a neutral light, the evidence is not free of contradictions. The statement of Martinez's superior Lerma is compelling: "The deposit is for August 27, 2002. It was somehow misplaced in transit from the school to the bank." This connotes that, at a minimum, the ongoing investigation had shifted from Martinez. However, the evidence at trial demonstrates that on the date in question (1) the investigation focused on Martinez despite unquestioned access, (2) adequate measures were not in place to secure deposits, and (3) the investigation never traced the deposit in question once the cafeteria bags were received and accepted by the bank. In this regard, as part of our factual sufficiency analysis, we summarize the "most important evidence." *Zuniga,* 144 S.W.3d at 484–85; *Sims,* 99 S.W.3d at 603.

### 1. Access

### (a). Access Up to and Including the Secured Office

Martinez was an employee of MISD and by virtue of her position she received public funds for deposit. The parties do not dispute she was a public servant. The evidence further shows that (1) she was hired by MISD in 2000 as cafeteria manager, (2) accountability for the monies from the cafeteria was within her job responsibility, (3) other than the bank, she was the only one with the keys to the money bags, and (4) she was responsible for counting cafeteria proceeds and securing the bank deposits to be made. On August 30, 2002, Officer Rodriguez picked up and delivered to the bank two cafeteria bags, numbers 2117 and 2119, and one office bag. The school log shows that bag 2116, the only other assigned bag to Martinez, was logged in on a prior day. Martinez admitted that the locked bank bag containing the deposit for $298.85 was in her possession. She testified that the last time she saw the bag and deposit was when she left both cafeteria bags in one bag with Officer Rodriguez.

Officer Rodriguez denied the encounter with Martinez. Assistant principal Riley, the witness Martinez identified as present at the time of the claimed exchange with Officer Rodriguez, did not recall the incident. However, Riley also testified that a person with the keys to open the secured room must open the filing cabinet and open the red box that holds the money for pickup. Martinez and Officer Rodriguez did not have a key to the locked room. Riley also testified that the manager must log in the bank bags and "one of us will stay in while the manager completes the log." Riley further testified that the manager is "never in the room alone." Someone provided access to Martinez to the secured room consistent with procedure. Martinez identified Riley as that authorized person. Riley was not asked, nor did she deny, that she was the person who provided access that day.

The school log demonstrates that Martinez gained authorized access to the locked room, the locked file cabinet, and the red box in the file cabinet. Standard procedure as to completing the school log demonstrates that, by her documentation, Martinez left bag 2119 with the funds in it in the red box. Other than Martinez's testimony, there is no evidence that she combined the two bags in her possession or that she combined them at the officer's request. However, Officer Rodriguez left two cafeteria bags at the bank that day. No testimony was adduced as to the contents of the second cafeteria bag, assuming Martinez explained the contents of one.

### (b). Access By Bank Personnel

Officer Rodriguez's police log demonstrates that two cafeteria bags were picked up and delivered to the bank. The bank, by initials on Officer Rodriguez's log, confirmed delivery of two cafeteria bags, not one. However, the bank did not confirm delivery of the specific bags identified on Officer Rodriguez's log. The bank worked two of the three bags Officer Rodriguez left. For the period in question, the bank worked four deposits. However, the State adduced no evidence that the deposits were from the same or different bags. The State adduced no evidence as to which bags were worked. The evidence establishes that the bank did not keep records as to which bags were worked and by whom and which deposits they contained.

The evidence indicates that, at the time in question, more than one bank teller worked a bag. More importantly, evidence demonstrates that, contrary to Officer Rodriguez's testimony, a bank teller's initials on the police log confirmed only that the bags were received and the number of bags received, not that they were secure and locked. Moreover, the State did not adduce evidence that bank tellers Ozuna and Barrera received bags that were locked and secured before they worked them. Further, the State did not adduce evidence as to who maintained custody of the cafeteria bags from receipt through processing. Bank teller Barrera's testimony indicates she received the bag she worked the day after the bank accepted them from Officer Rodriguez. The record does not show what bank personnel did with the bags in the interim.

The bank worked the day's cafeteria deposit for August 29, 2002, documented by the deposit slips admitted in evidence, but did not work the corrected deposit because it was never found. Testimony showed that Officer Rodriguez's investigation of the missing funds did not include the bank. Similarly, his superiors testified that further investigation did not involve the bank. Thus, that the corrected deposit was never found is consistent with the admitted absence of an investigation involving the bags up to and including the

bank handlers of the bags. Testimony showed that the bank had no records to trace deposits to the bags. Access to bank bags once in the bank was undocumented; one or more individuals could work a single bag.

### (c). Access By Officer Rodriguez

Officer Rodriguez's superiors testified that he was assigned to investigate, even though he was a key witness in the events that were under investigation. He testified that his procedure was to tug at the bags to ensure they were locked, but he did not testify that the bags in question were locked when he picked them up. The State adduced no evidence as to who accepted the two cafeteria bags in question at the bank, who was present when a bank teller took any money out of the bank bags, who knew whether any bank teller handled the bags improperly, whether the bank bags were secured when received and worked, who opened the bags if locked, and what happened to the bags once accepted by the bank until the time they were worked. Rather, Officer Rodriguez, a key witness to the events in question, was assigned to investigate. The investigation went no further than Martinez.[20]

### 2. Cash Handling Procedure

#### (a). Combining the Contents of One Bag in Another Bag

Assuming without deciding that Martinez combined the deposits, the State did not adduce evidence that she violated a cash-handling policy by doing so. Assis-

---

tant principal Riley's response to a hypothetical question that she would not allow Martinez to combine the deposits is negated by her subsequent testimony that combining deposits in one bag might occur without her knowing it. Although Riley testified she would not have permitted Martinez to combine the bags if done in her presence, she testified, "We don't combine money into one bag unless she brings it that way and I am not aware of it." Because Riley did not recall the key events Martinez recounted regarding combining the bags in her presence, viewed neutrally her testimony raises a reasonable contrary inference, namely, that Riley was new to the school and need not question combining the contents of the bags in the presence of the police courier. Further, the evidence does not negate Riley's presence in the secured room. Someone provided access to the secured room. Martinez identified Riley as the person in the room. Riley was one of the persons authorized to provide access.

The column in the school log requesting the amount of the deposit is blank on all transactions recorded. Completing the school log's columns fully was apparently not mandatory.

#### (b). Return of the Incorrect Deposit

Martinez requested the return of the deposit that was twenty dollars short in lieu of depositing the amount less the twenty dollars. The procedure was consistent with bank policy, according to teller Ozuna. Martinez admitted she found twenty dollars on her desk. She corrected the deposit in the presence of a witness,

---

**20.** Evidence showed a deposit for the exact same amount of $298.85 made into the MIHS account in mid-September. However, Elena Flores, accounting coordinator for MISD, testified that despite being for the same exact amount, that deposit was from a different school, not MMS. Flores also testified that her office received a copy of the deposit slip from the cafeteria, the color of which reflects the copy normally sent to the bank. She marked on it that the bank endorsement was missing so that she could cross-check it with the monthly bank statement.

her subordinate Zuniga. Zuniga observed Martinez leave her office with a bag. Martinez testified she left the office with two bags, one containing the corrected deposit and the other containing the day's deposit and combined the bags. Zuniga also testified that Martinez exited the office behind her.

Importantly, bank teller Ozuna testified that if a deposit slip was the sole item in the bank bag, she would probably return it on the assumption that someone forgot to remove it from the bag. Conversely, bank policy required she call the school contact if the deposit slip showed a discrepancy greater than ten dollars. Thus, a bank bag with only a deposit slip and no money included would not be questioned, however but a bank bag with a deposit slip with a ten-dollar discrepancy as to the money in the bank bag required inquiry and contact with the person completing the deposit slip.

### (c). The Jury's Role

By its verdict, the jury rejected Martinez's testimony and her claim of innocence. Martinez's written statement represented that, while in the secured room, Officer Rodriguez requested she open the bag in his possession and that Martinez place her bag in that bag. At trial, she testified that Officer Rodriguez requested she combine the two bags in her possession. Martinez's testimony that she opened the bag at some time other than when at her office at the request of the officer may have raised a concern to the jury that she had removed the money.

### D. Factual Sufficiency Disposition

In this case, the ultimate facts in question included (1) appropriation of the currency and (2) the specific intent to deprive the owner of it by deception. A jury may infer intent from any facts which tend to

prove its existence. *See Griffin,* 614 S.W.2d at 159. The evidence demonstrates that Martinez knew that the money in the bag was to be placed in the locked box inside the locked filing cabinet at the secured office where it would be picked up by the officer and deposited by the bank. She was the only one with a key to the bag until it reached the bank.

By its verdict, the jury could have reasonably inferred that the deposit, if not removed by Martinez, could not have been removed until the bag reached the bank teller. However, considering all of the evidence in a neutral light, we must determine whether the jury was rationally justified in finding that the State proved the essential elements of the offense beyond a reasonable doubt. *Zuniga,* 144 S.W.3d at 484–85. The question we must answer is whether the evidence is factually sufficient to prove that Martinez appropriated the deposit by deception. We have concluded that the circumstantial evidence is sufficient to meet the legal sufficiency standard of review. We based our decision on inferences derived from the circumstantial evidence. We are mindful that circumstantial evidence is direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven. *Cowan v. State,* 840 S.W.2d 435, 438 n. 10 (Tex.Crim.App.1992). However, proof which amounts to only a strong suspicion or mere probability is insufficient. *Pedraza v. State,* 34 S.W.3d 697, 700 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (citing *Skelton v. State,* 795 S.W.2d 162, 167 (Tex.Crim.App.1989) and; *Grant v. State,* 989 S.W.2d 428, 433 (Tex.App.-Houston [14th Dist.] 1999, no pet.)). It is the appellate court's function to ensure that no one is convicted of a crime except on proof beyond a reasonable doubt. *Id.*

Thus, our factual sufficiency review requires we review the same evidence as in

our legal sufficiency review and contrary evidence. In our lengthy recitation of the facts viewed in a neutral light, we have done so, mindful of the jury's role. That the jury disbelieved Martinez does not mean that they believed Officer Rodriguez, the only other person who before leaving the bag at the bank, handled the same bag that Martinez logged in and that she stated contained the corrected deposit. More importantly, numerous inconsistencies in the lax security and cash-handling measures involving the missing deposit lead us to conclude that, when considered by itself, the evidence supporting the essential elements of appropriation and deception is factually insufficient. *See* TEX. PEN.CODE ANN. § 31.01(1)(A), (4) (Vernon Supp.2005). We find no evidence, and the State does not direct us to any, that overcomes our conclusion.

Viewed in a neutral light, evidence establishes that Martinez denied culpability. The State's theory was essentially that, because the deposit was missing, Martinez must have kept it. Martinez acknowledged that, as cafeteria manager, she was responsible to secure all deposits of proceeds from cafeteria sales and leave them in the secured office for transport to the bank. She turned the deposit over to Officer Rodriguez. Only the bank and she had the keys to the bags. The evidence does not prove that the bags were locked when Officer Rodriguez received them, when he left them with the bank, or when the bank tellers worked them. Numerous tellers had access to the bags once in the bank's possession. The evidence does not show whether anyone looked at or in the office bag that was marked in the school log on the same day as the cafeteria bags or in the office bank account to see if the deposit was mistakenly made in the wrong account.

Faced with a record of historical facts supporting conflicting inferences, we presume that the trier of fact resolved any conflicts in favor of the prosecution. *See Jackson,* 443 U.S. at 326, 99 S.Ct. 2781. While some evidence may raise a question of credibility, the State's proof of Martinez's guilt is so obviously weak as to undermine confidence in the fact finder's determination. While it was reasonable for the jury to conclude that MISD and supervisors expected Martinez to perform the task of securing the deposit monies and ensuring that they arrived safely at the front office, it is unreasonable to conclude that, because the deposit did not make it into the MMS account, Martinez took it, without more. Significantly, Martinez testified that she opened the bag while in the secured office. The conflicts in testimony begin there. The investigation, however, stopped there.

In short, we have considered the evidence supporting both the verdict and evidence contrary to the verdict. *See Zuliani,* 97 S.W.3d at 593. Weighing all the evidence under this balancing scale, we conclude that, on this record, the contrary evidence is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id.* We also conclude that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Vodochodsky,* 158 S.W.3d at 510. We find insufficient facts for the jury to have found Martinez guilty of theft by deception as a public servant beyond a reasonable doubt. We sustain Martinez's fifth issue.

### IV. CONCLUSION

Because we sustain Martinez's fifth issue as to the factual sufficiency of the evidence, we reverse the judgment and remand for a new trial. *Clewis,* 922 S.W.2d at 133–34; *Swearingen,* 101

S.W.3d at 97. Because our resolution of this issue is dispositive, we need not reach the remaining issues. Tex.R.App. P. 47.1.