PD-1614-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/2/2015 5:11:16 PM
Accepted 2/4/2015 11:06:27 AM
ABEL ACOSTA
CLERK

NO.   PD-1614-14

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF TEXAS

**JULIAN HOMERO VEGA, Appellant**

**vs.**

**THE STATE OF TEXAS, Appellee**

**APPELLANT VEGA'S PETITION FOR DISCRETIONARY REVIEW OF THE JUDGMENT AND OPINION IN CAUSE NO. 13-13-00126-CR**

FILED IN
COURT OF CRIMINAL APPEALS

February 4, 2015

ABEL ACOSTA, CLERK

**Respectfully submitted by Appellant's attorney,**

**VICTORIA GUERRA**
**Texas Bar No. 08578900**
**320 W. Pecan Blvd.**
**McAllen, Texas  78501**
**(956) 618-2609**
**(956) 618-2553 Fax**

**ORAL ARGUMENT WAIVED**
**UNLESS REQUESTED BY COURT**

## IDENTITY OF PARTIES AND COUNSEL

Julian Homero Vega (hereinafter "Appellant" or "Mr. Vega") certifies that below is a complete list of all parties to the trial court's judgment and their trial counsel's names, addresses and telephone number.

1. Mr. Flores, resides in the I.D.T.D.C.J., James Lynaugh Unit,, 1098 South Highway 2037, Fort Stockton, TX 79735. His TDCJ number is: 01821321.

2. Mr. Vega's trial attorney was Oscar Vega, whose office address is 2415 N. 10th, McAllen ,TX 78501; phone number: (956) 630-1979.

Mr. Flores' appellate counsel is the undersigned, Victoria Guerra, whose address is 3219 N. McColl Rd., McAllen, TX 78501; phone number: (956) 618-2609; facsimile: (956) 618-2553.

3. Appellee is the State of Texas.

4. Appellee is represented by the Hidalgo County Criminal District Attorney, Ricardo Rodriguez. Christopher Paul Cavazos and Richard Daniel Gonzales were the trial attorneys. The Appellee's appellate attorney are Assistant Criminal District Attorney, Ted. Hake and Luis Gonzalez. All of their addresses are at the Office of the Hidalgo County District Attorney, Hidalgo County Courthouse, 100 N. Closner, Room 303, Edinburg, Texas 78539. Their phone number is (956) 318-2300 and their fax number is (956) 318-2301.

5. This case was heard by the Trial Court, Judge Mario Ramirez, and by a panel of three judges on the Thirteenth Court of Appeals who affirmed the judgment of the Trial Court.

*/s/ Victoria Guerra*
Victoria Guerra

ii

# TABLE OF CONTENTS

**TABLE OF CONTENTS**……………………………………………………………..

**LIST OF AUTHORITIES**………………………………………………………...

**STATEMENT REGARDING ORAL ARGUMENT**……………..……………

**STATEMENT OF THE CASE**………………………..…………………………

**STATEMENT OF PROCEDURAL HISTORY**………………………………..

**GROUNDS FOR REVIEW**………………………………………………………

**ARGUMENT AND AUTHORITIES**…………………………………………....

**PRAYER**……………………………………………………………………….....

**CERTIFICATE OF SERVICE**…………………………………………………

**APPENDIX**……………………………………………………………………….

# INDEX OF AUTHORITIES

Cases

Anderson v. State, 322 S.W.3d 401
(Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).................................10

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ....................10, 11

Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App. 1996) .................................15

*Coit v. State, 808 S.W.2d 473 (Tex.Cr.App. 1991)*.....................................15

*Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).....................11

*Ervin v. State*, 331 S.W.3d 49
(Tex. App.—Houston [1st Dist.] 2010, pet ref'd).................................11

*Gonzalez v. State*, No. No. 06-12-00117-CR, 2013 Tex. App. LEXIS 9385,
(Tex. App.—Corpus Christi July 29, 2013)...........................................15

*Hobbs v. State*, 298 S.W.3d 193 (Tex. Crim. App. 2009) ...........................5

*In re M.P.A.*, 364 S.W.3d 277 (Tex. 2012) ...............................................10

*In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)*............15

*Jackson v. Virginia*, 433 U.S. 307 (1979) ...................................................11

*Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012)......................10

Johnson v. State, 978 S.W.2d 703 (Tex.App.—Corpus Christi 1998),
*aff'd*, 23 S.W.2d 1 (Tex.Cr.App. 2000)..................................................15

*Jordan v. State*, 883 S.W.2d 664 (Tex. Crim. App. 1994)...........................4

*Lancon v. State*, 253 S.W.3d 699 (Tex. Crim. App. 2008)........................10

*Long v. State, 7 S.W.3d 316 (Tex.App.—Beaumont 1999, no pet.)*.............15

*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ...................14

*Martinez v. State*, 198 S.W.3d 36
    (Tex. App.—Corpus Christi 2006, no pet.) ...............................................10

*Matlock v. State*, 392 S.W.3d 662 (Tex. Crim. App. 2013) ........................10

*McCormick v. U.S.*, 500 U.S. 257 (1991) ...................................................15

*Mullins v. State*, 37 Tex. 337 (1872-73) .......................................................6

*Musgrove v. State*, 986 S.W.2d 738
    (Tex. App.—San Antonio 1999, pet ref'd.)..................................................5

*Reyes v, State*, 849 S.W.2d 812 (Tex. Crim. App. 1983) .........................4, 8

*McIntire v. State*, 698 S.W.2d 652 (Tex. Crim. App. 1985).........................5

*Smith v. State*, 286, S.W.3d 333 (Tex. Crim. App. 2009) .....................4-5, 7

*State v. Gonzalez*, 855 S.W.2d 692, 693 (Tex. Crim. App. 1993)................6

*Tibbs v. Florida*, 457 U.S. 31(1982) ..........................................................10

*Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009)..............14

*Winfrey v. State*, 323 S.W.3d 875 (Tex. Crim. App. 2010) ........................13

*Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) .........................11

Statutes
Tex. Pen. Code § 2.01 (Vernon 1997)...........................................................15

Tex. Pen. Code § 22.021(a) (1) (B) (i).........................................................15

Other Authorities
http://www.nbcdfw.com/news/local/Scent-IDs-Lineups-Are-Junk-Science-Innocence-Project-59803817.html ............................................................13

Rules

TEX. R. APP. P. 21.2............................................................................6

Constitutional Provisions

Texas Constitution art. V, § 6(a) ............................................................. 10

Fourteenth Amendment to the United States (U.S.) Constitution................. 15

## NO. PD-1614-14

## IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF TEXAS

_____

### JULIAN HOMERO VEGA, Appellant

### vs.

### THE STATE OF TEXAS, Appellee

_____

### APPELLANT VEGA'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW Julian Homero Vega, Appellant in the above styled cause, and respectfully urges this Court to grant discretionary review of the above cause.

### STATEMENT REGARDING ORAL ARGUMENT

Appellant waives oral argument, unless this Court deems that oral argument is necessary.

## STATEMENT OF THE CASE

Appellant was indicted on or about April 18, 2012 in a three count indictment. Count one alleges that "…Defendant, on or about the 31st day of December A.D., 2011, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally or knowingly cause the penetration of the sexual organ of ███████████ a child who was then and there younger than 14 years of age by defendant's sexual organ." (C2-3).

Count three alleges "…Defendant, on or about the 1st day of November A.D., 2011, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally or knowingly cause the penetration of the sexual organ of ███████████ a child who was then and there younger than 14 years of age by defendant's finger." (C2-3).

On October 4, 2012, after a jury trial, the Mr. Vega was found guilty of aggravated sexual assault in count one, and not guilty as to count three. (11R49). On October 19, 2012, the district court assessed a sentence of eighteen years' imprisonment in the Texas Department of Criminal Justice Institutional Division. (12R7).

2

## STATEMENT OF PROCEDURAL HISTORY

On October 4, 2012, after a jury trial, the Mr. Vega was found guilty of aggravated sexual assault in count one, and not guilty as to count three. (11R49). On October 19, 2012, the district court assessed a sentence of eighteen years' imprisonment in the Texas Department of Criminal Justice Institutional Division. (12R7). The judgment was signed on October 19, 2012. (C204-06). A motion for new trial was filed on November 14, 2012 with supporting evidence. (C209-220

Mr. Vega filed a notice of appeal on November 15, 2012. (C221).

On July 24, 2014, the Thirteenth Court of Appeals affirmed the Trial Court's judgment. *See* Appendix.

Appellant's motion for rehearing was overruled on October 28, 2014. This Court granted until today February 2, 2015 to file Appellant's PDR.

## QUESTION FOR REVIEW

**ISSUE NO. 1: Whether the Trial Court erred in allowing his motion for new trial to be overruled by operation of law when Mr. Vega's motion for new trial raised matters that were not determinable from the record and Mr. Vega did not waive his attendance at said hearing.**

**ISSUE NO. 2: Whether the evidence is factually insufficient to support the verdict and judgment.**

**ISSUE NO. 3: Whether the evidence is legally insufficient to support the verdict and judgment in this case.**

3

# ARGUMENT

**ISSUE NO. 1: Whether the Trial Court erred in allowing his motion for new trial to be overruled by operation of law when Mr. Vega's motion for new trial raised matters that were not determinable from the record and Mr. Vega did not waive his attendance at said hearing.**

Appellant seeks review of the Court of Appeals' reliance and interpretation of *Smith v. State*, 286, S.W.3d 333 (Tex. Crim. App. 2009), which is misplaced.

As a prerequisite to a hearing, when the grounds in the motion are based on matters not already in the record, a new trial motion must be supported by an affidavit, either from the defendant or someone else, specifically setting out the factual basis for the claim. The affidavit need not establish a prima facie case, or even "reflect every component legally required to establish relief" but affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed and no hearing is required. *See Reyes v, State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1983); *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (holding that conclusory affidavits that did not state "reasonable grounds" requiring hearing). In addition to alleging facts rather than conclusions, there must be a showing of reasonable grounds for relief. The supporting affidavit need not reflect every component legally required

4

to establish relief so long as the affidavit "demonstrates reasonable grounds" for relief. *See McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985); *Musgrove v. State*, 986 S.W.2d 738, 739,740 (Tex. App.—San Antonio 1999, pet ref'd.) (holding that because supporting affidavit demonstrated reasonable grounds for believing jury misconduct occurred, trial court abused discretion by failing to conduct hearing). In order to prevent such fishing expeditions, not only must the movant for a hearing on a new trial motion raise matters which are not determinable from the record, the applicant must establish reasonable grounds showing that the defendant could potentially be entitled to relief. *See Smith*, 286 S.W.3d at 338; *Hobbs v. State*, 298 S.W.3d 193 (Tex. Crim. App. 2009) (holding that reasonable grounds showing is designed to prevent "fishing expeditions". If the trial court finds that the defendant has met the criteria for a hearing on a new trial motion, the court abuses its discretion in failing to hold a hearing. *See Smith*, 286 S.W.3d at 340; *Hobbs*, 298 S.W.3d 193 (holding that when defendant raised single claim stating supporting facts he did not intentionally relinquish his right to jury trial, no fishing expedition was involved and trial judge abused discretion in refusing to hold hearing).

Appellant's motion for new trial stated, among other things:

(1) the verdict in this cause is contrary to the law and the evidence. Count 1 and Count 3 are factually intertwined. Both

5

counts revolve around the credibility of the victim witness. The jury chose not to believe the victim in Count 3, but chose to believe her in Count 1. The inconsistent verdicts tend to show that the verdict was contrary to the evidence.

(2) the trial court has the discretion to grant a new trial in the interest of justice, as the Court of Criminal Appeals has held in *State v. Gonzalez*, 855 S.W.2d 692, 693 (Tex. Crim. App. 1993) and *Mullins v. State*, 37 Tex. 337, 339-340 (1872-73)…

(C209-220).

During the trial of this cause, and outside the presence of the jury, the trial court considered Mr. Vega's proffer that during his attorney's cross examination of ███████, Dulce Carreon and Margarita Bernal bore witness to Claudia Trevino (a complainant against Mr. Vega in an unrelated case) coach ████████ on how to answer Mr. Vega's counsel's cross examination questions, by nodding her head up and down, or moving her head up and down. The trial court responded as follows: "I was looking and didn't notice." The trial court accepted Mr. Vega's proffer and stated: "even assuming if it is correct, your motion for mistrial is denied."

In response to the Appellant's first issue, this Court held:

Because the issue of witness-coaching was already brought to the trial court's attention during trial and preserved through the trial court's ruling on Vega's motion for mistrial, we conclude that this matter is determinable from the record and was sufficiently addressed by the trial court. Accordingly, the trial court did not abuse its discretion by denying a hearing on Vega's motion for new trial based upon the Carreon and Bernal affidavits. See TEX. R. APP. P. 21.2 (noting that a motion for

6

new trial is a prerequisite to presenting an issue on appeal only when necessary to adduce facts not in the record); Smith, 286 S.W.3d at 338.

The remaining two affidavits appear to attack J.C.'s credibility and character. Padilla's affidavit states that she is J.C.'s cousin and that even though J.C. is twelve years old, Padilla saw J.C. drink "a Jello shot at a party" and that she also saw a bottle of vodka inside J.C.'s bedroom. Padilla also stated that J.C. would "sneak out" of her house late at night and go to the neighbor's house. Padilla further asserted that J.C. told her about a teenaged boy in the neighborhood named George that J.C. wanted to engage in sexual intercourse. Padilla further stated in her affidavit that J.C. told her that J.C.'s friends thought that she was pregnant. B.V., who is also related to J.C., asserted in his affidavit that one day when he and J.C. walked to a neighborhood store, she pointed to a house where a teenaged boy lived. According to B.V., J.C. stated that the boy told her that whenever she came to his house, J.C. was supposed to "bring condoms" with her.

While the matters asserted in the Padilla and B.V. affidavits are not determinable from the record, in order to be entitled to a hearing on a motion for new trial, the defendant must establish the existence of reasonable grounds showing that the defendant could be entitled to relief. See id. at 339. After reviewing his motion for new trial and briefing on appeal, we do not see any arguments based upon the Padilla and B.V. affidavits that establishes the existence of reasonable grounds that would entitle Vega to a new trial. The Padilla and B.V. affidavits are attacks on complainant's reputation, which is inadmissible under the rules of evidence. See TEX. R. EVID. 412. Therefore, we hold that the trial court did not abuse its discretion by denying a hearing on Vega's motion for new trial based upon the Padilla and B.V. affidavits.

The appellate court expected Appellant to establish a prima facie case in the affidavit; however, setting forth a primie facie case is not

necessary. *See Reyes*, 849 S/W/2d at 816. The evidence contained in Appellant's motion for new trial established reasonable grounds that show that Appellant was potentially entitled to relief. The relief that the Appellant would be entitled to is that without the coaching of the child witness, the jury would hear a more clear picture of her credibility. The child witness was the only evidence presented at trial that implicated the Appellant. The jury obviously believed her over any other testimony presented at trial. A hearing on the Appellant's motion for new trial would have developed this evidence further. The witnesses who observed the coaching of the testifying child witness would have testified as to what they saw. The Trial Court would have been able to assess more clearly what the situation.

Claudia Trevino's conduct of coaching a child witness goes to the very heart of Mr. Vega's conviction. It affects the credibility of the child witness, ███████. Without a full blown hearing on a motion for new trial, Mr. Vega will not have the opportunity to fully develop prejudice and harm for either a new trial if granted, or for the appeal of this cause. A hearing on Mr. Vega's motion for new trial would further develop witness testimony from Dulce Carreon and Margarita Bernal as to the actions of Claudia Trevino. A hearing on Mr. Vega's motion for new trial would also allow full development of the tampering charge, as well as fuller development into

8

whether ████████ was being pressured by other adults into bringing these charges against Mr. Vega. It would also give Mr. Vega an opportunity to compel the attendance of Ms. Trevino and ████████ to answer to not only tampering charges, but also to the reasons for the tampering and the harm and prejudice it played in Mr. Vega's trial. Finally, a hearing on a motion for new trial would develop the record to establish evidence that the child victim was not as chaste in mind or past actions as the prosecutor led the jury to believe. In fact, the child may have already been having sex with a neighbor boy. (10R161-63). The State opened the door to allow this testimony by eliciting from Nurse Garza that ████████ had never had sex before, therefore she did not examine her with a speculum. (10R90). Lastly, a full hearing on Mr. Vega's motion for new trial would allow the trial court to hear this evidence and grant a new trial "in the interest of justice."

As a result of the foregoing, this Court of Appeals erred in failing to remand this case to the Trial Court for a hearing on Appellant's motion for new trial.

**ISSUE NO. 2: Whether the evidence is legally insufficient to support the verdict and judgment in this case.[1]**

The legal sufficiency standard is, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex. Crim. App. 2012) quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 898-99 (Tex. Crim. App. 2010). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v.*

---

[1] Mr. Vega requests that this Court follow its own stare decisis of factual sufficiency analysis like made in *Martinez v. State*, 198 S.W.3d 36 (Tex. App.—Corpus Christi 2006, no pet.) and find the jury verdict to be a miscarriage of justice, and conclude that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.

It should be noted that in *Tibbs v. Florida*, 457 U.S. 31(1982), the Court held the Double Jeopardy Clause of Amends. V and XIV, United States Const., does not bar retrial, where the initial "rare reversal" rested on a finding the conviction was against the great weight of the evidence). The Tibbs court shows how in Florida a reversal based on factual evidential weight is so different from a reversal stemming from legally insufficient evidence to convict. Id., at 35-47. See *In re M.P.A.*, 364 S.W.3d 277, 284 n. 6 (Tex. 2012) (holding that the Texas Constitution art. V, § 6(a) (stating that courts of appeals' decisions are conclusive on all questions of fact) prohibits our Court from engaging in factual sufficiency review); *Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013) (holding that to evaluate factual sufficiency, the Court of Appeals must consider the entire body of evidence in a neutral light to determine whether the jury findings were so "against the great weight and preponderance" of the evidence as to be manifestly unjust).

*State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). The reviewing court must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

The victim identified the appellant by hair only at trial. 10R30. The Court of Appeals relied on hearsay testimony by the officer who testified that when he interviewed the victim, she identified the appellant by the pink and black shirt that he was wearing. In *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) the Texas Court of Criminal Appeals held that on elements that the State has the burden to prove beyond a reasonable doubt, the reviewing court reviews both a legal sufficiency challenge and a factual sufficiency challenge under the same *Jackson v. Virginia* sufficiency standard. *See Jackson v. Virginia*, 433 U.S. 307, 318–19 (1979); *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet ref'd).

███████ was extremely inconsistent in her own testimony. First she testified that she went to sleep in her house after popping fireworks and that her brother was there when she went to bed. (10R26). After prompting from the DA, she testified that she and her brother watched a little TV and then she went to bed. (10R27). Then she testified that they were watching a movie (Tintin) around 1:00-2:00 a.m. Her brother fell asleep so ███████ turned off the TV and she fell asleep. (10R28). Then

11

she testified that her brother fell asleep on the couch and she went to sleep in her bed. (10R29).

Second, ▓▓▓▓▓ testified that she always locks the door of her room or the house. (10R14). She testified she locked the door. (10R29). She later testified that there is no door to her bedroom. (10R50).

Third, ▓▓▓▓▓ testified that she knew it was Mr. Vega because she could see his hair cut from the light coming through the window. ▓▓▓▓▓ did not testify that she saw his facial features, or that she heard his voice, or that she recognized his body structure. She did not testify that Mr. Vega had unique hair that she could never forget such a Mohawk or a long pony tail. This Court can take judicial notice of the fact that Mr. Vega, a Hispanic man, probably has the same hair color and style as 99.9% of the Hispanic male population in Hidalgo County. If there was sufficient light shining in from the windows from the trucks at the next door party, why couldn't ▓▓▓▓▓ clearly see the face of the perpetrator and not just his hair? To convict on this shabby evidence is no different than convicting on the basis of junk science. For example, dog scent line-ups, a practice that the Texas Innocence Project calls "down home voodoo" and which has resulted in the wrongful conviction of multiple people, is now considered "junk science," also resulting in the dismissal of many cases by the

12

prosecutor's office.[2]   *See Winfrey v. State*, 323 S.W.3d 875 (Tex. Crim. App. 2010).

Mr. Vega submits that this Court must find that the requisite jury findings were against the great weight of the credible evidence under the circumstances of this record; and that there is factually insufficient evidence to convict, for the great weight of the credible evidence shows:

(1) there is nothing notable in Nurse Garza's report other than the healed tear and ████████ statements.

(2) Mr. Vega and his wife Dominga's supply an alibi of where Mr. Vega was that entire evening and early morning.  There was a barbeque occurring across the street at an uncle's house.  (10R120).  Mr. Vega gave permission to the kids to go to the uncle's barbeque.  (10R120).  Mr. Vega and Dominga stayed on the porch  (10R120, 138).  Mr. Vega was with Dominga the entire time.  (10R142).  Dominga did not see Mr. Vega go to the back of the house to try to have sex with ████████ between the hours of 10:00 p.m. to 2:00 a.m.  (10R142).

(3)  Mr. Vega believes that ████████ concocted this whole thing up because she was upset upon finding out that Mr. Vega was her father.

---

[2] *See* http://www.nbcdfw.com/news/local/Scent-IDs-Lineups-Are-Junk-Science-Innocence-Project-59803817.html which describes the practice in the past and the current veer away from that practice today.

13

(10R126). Mr. Vega wants to give her the same as he does his other kids, but he hasn't been able to. (10R126).

(4) Bernardo Cervantes (Dominga's nephew who had a headache) and ██████ went to the back room to sleep. (10R139). Valentine Cervantes, Jr. and Julian Vega, Jr. went to the back area, outside the door to the back room where ██████ stated the assault occurred. (10R140). In this area, there exists gym equipment and a boxing punching bag. (10R140). After returning from the Uncle's house, they stayed outside the back room until about 4:00-5:00 a.m. (10R166). Julian Vega, Jr. was outside ██████ door when she went to bed. (10R168). During the time that Julian Vega, Jr. was outside the back part of the house where ██████ stays, no one entered (10R169) or exited the back room. (10R172).

A reviewing court must measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately

14

describes the particular offense for which the defendant was tried. *Id.*; *see also Gonzalez v. State*, No. No. 06-12-00117-CR, 2013 Tex. App. LEXIS 9385, \*\*4–7 (Tex. App.—Corpus Christi July 29, 2013). A person commits an offense aggravated sexual assault (1) if the person (2) intentionally or knowingly (3) causes the penetration of the sexual organ of a child under fourteen by any means. TEX. PENAL CODE ANN. § 22.021(a) (1) (B) (i).

Legal insufficiency is a question of law comprising the minimum standard for comporting with federal due process.[3] Because there is no greater "manifest injustice" than to send a person to prison whose guilt has not been established beyond a reasonable doubt,[4] the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires every state conviction be supported by the requisite evidence beyond a reasonable doubt.[5] Tex. Pen. Code § 2.01 (Vernon 1997) contains the same requirement.[6]

The State failed to prove the first element—that Mr. Vega is the one that committed the act of aggravated sexual assault and the Court of

---

[3] *Clewis v. State,* 922 S.W.2d at 131-134.

[4] *Johnson v. State*, 978 S.W.2d 703, 707 (Tex.App.–Corpus Christi 1998), *aff'd,* 23 S.W.2d 1 (Tex.Cr.App. 2000).

[5] *In re Winship*, 397 U.S. 358, 362-364, 90 S.Ct. 1068, 1071-1073, 25 L.Ed.2d 368 (1970); *Coit v. State*, 808 S.W.2d 473, 475 (Tex.Cr.App. 1991); *Long v. State*, 7 S.W.3d 316, 317-318 (Tex.App.–Beaumont 1999, no pet.).

[6] *Long*, 7 S.W.3d at 318.

Appeals committed error when it so affirmed.  So questionable is ███████ identification of Mr. Vega—by his hair cut—that it does not support the verdict or judgment in this case.  ████████ testified that she knew it was Mr. Vega because she could see his hair cut from the light coming through the window.  ███████ did not testify that she saw his facial features, or that she heard his voice, or that she recognized his body structure.  She did not testify that Mr. Vega had unique hair that she could never forget such a Mohawk or a long pony tail.  She did not testify that Mr. Vega wore a pink and black shirt.  In the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Further, it is manifestly unjust to send Mr. Vega to prison for 18 years on the basis that ███████ identified him by his hair cut.  As such, Mr. Vega requests that this Court reverse the judgment in this case and enter a judgment of acquittal.

**Prayer:**  Wherefore, Appellant prays that this Court the set aside the judgment of the trial court and the decision of the appellate court, and remand this case back to the trial court for a new trial.

Respectfully submitted,

Law Office of Victoria Guerra
320 W. Pecan Blvd.
McAllen, Texas 78501
(956) 618-2609
(956) 618-2553 (facsimile)

By:     */s/ Victoria Guerra*
Victoria Guerra
State Bar Number:  0857900
Appellate Attorney for Appellant

## CERTIFICATE OF SERVICE

On this 2nd day February, 2015, the undersigned delivered a copy of the foregoing Appellant's brief to Appellee's Counsel Assistant Criminal District Attorney, Luis Gonzalez via email: luis.gonzalez@da.co.hidalgo.tx.us

*/s/ Victoria Guerra*
Victoria Guerra

## CERTIFICATION OF COMPLIANCE

In compliance with TRAP 9, the undersigned certifies that the number of words in this brief, excluding those matters listed in Rule 9.4 is 3,758.

*/s/ Victoria Guerra*
Victoria Guerra



NUMBER 13-13-00126-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JULIAN HOMERO VEGA,                                                                Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.

### On appeal from the 332nd District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Benavides

By six issues, which we reorganize and address as four, appellant Julian Homero Vega appeals his conviction for aggravated sexual assault of a child younger than fourteen years of age, a first-degree felony.   *See* TEX. PENAL CODE ANN. § 22.021 (West, Westlaw through 2013 3d C.S.).   Vega asserts that (1) the evidence is

legally insufficient to sustain his conviction; (2) the trial court erred by allowing his motion for new trial to be overruled by operation of law; (3) the trial court committed reversible error by admitting testimony pertaining to the credibility of the complainant, J.C.[1]; and (4) the trial court erred by excluding impeachment testimony regarding J.C.'s prior sexual knowledge. We affirm.

## I.    BACKGROUND

A Hidalgo County grand jury indicted Vega on two counts of aggravated sexual assault of a child younger than fourteen years of age, *see id.*, and one count of indecency with a child by contact. *See id.* § 21.11 (West, Westlaw through 2013 3d C.S.). Vega was tried before a Hidalgo County jury, and the record reveals the following facts:

In early January 2012, a parent in the La Joya Independent School District alerted school officials that J.C., one of her daughter's friends, told her daughter that she was being sexually abused at home. Officials called J.C. into the school's office for a conference with the school's principal, supervisor, and counselor. School counselor Cruz Alvarez testified that she was present at the meeting with J.C. and that J.C. made an outcry of abuse at home by Vega, her uncle. According to Alvarez, J.C. told the school officials that the abuse took place over the preceding New Year's holiday. Alvarez stated that the authorities were then called to the school, including persons from Child Protective Services, the La Joya ISD Police Department, and the Hidalgo County Sheriff's Office.

---

[1] Because she is a minor, we will identify the complainant only by her initials.

2

Hidalgo County Sheriff's Deputy Bobby Barron responded to the outcry call at the school. Deputy Barron testified that he spoke to J.C. that day, and J.C. reported sexual abuse by Vega. Deputy Barron testified that J.C. told him that Vega entered her bedroom as she slept in the early morning hours of New Year's Day 2012, forced himself on top of her, and put his penis inside of her vagina. According to Deputy Barron, J.C. identified Vega by his haircut and a "pink and black shirt" that he wore that night. Deputy Barron testified that an investigator from the Hidalgo County Sherriff's Office was dispatched to the school for further handling of the case.

After the outcry was made, Hidalgo County Sheriff's Investigator Miguel Lopez took over the investigation of this case. According to Investigator Lopez, J.C. was taken to the Child Advocacy Center to be interviewed by a forensic examiner. Investigator Lopez stated that he watched the forensic interview in its entirety. According to Investigator Lopez, J.C. told the examiner that, following the sexual contact with Vega, it hurt when she urinated. J.C. was then sent to Mission Regional Medical Center for a medical examination.

Evonne Garza, a sexual abuse nurse examiner and Mission Regional Medical Center's Forensic Program Coordinator, testified that she conducted a sexual abuse examination of J.C. Nurse Garza testified that J.C. reported abuse by Vega. Nurse Garza's examination revealed a "healed tear" on J.C.'s hymen at "6:00." According to Nurse Garza, the hymen is the "circular tissue that goes around the opening of the entryway of the vagina." Nurse Garza further explained that a "healed tear" means that a tear is present and has already healed or was in the process of healing. Nurse Garza stated that tears in the vaginal area heal quickly, usually "within a couple of days."

3

Finally, Nurse Garza testified that the location of the tear was "consistent" with the history given by J.C. and that the tear appeared to be "more of a penetrative injury."

J.C. also testified. According to J.C., she and her family used to live in a home on the same property as Vega. J.C. recalled three separate incidents of abuse by Vega. The first incident took place in November 2011, when she was home alone and Vega entered her house drunk. According to J.C., she pretended to be asleep that day so that Vega would leave her alone. Instead, Vega forcibly removed J.C.'s pants and "started to touch [her]" "with his fingers." J.C. testified that Vega made her feel "uncomfortable" that day. J.C. stated that Vega told her afterward not to tell anyone about what had happened and that he would buy her clothes. J.C. recounted a second incident that took place in December 2011. According to J.C., Vega tried to enter her home, and J.C. recalled that she hid from Vega in a pile of clothes. Eventually Vega entered the home and began looking for her.

The final incident took place in the early morning hours of New Year's Day 2012. According to J.C., she and her family members had a party at their home, in which they ate food and popped fireworks to celebrate the New Year. Vega was also at the gathering that night drinking beer. After they finished setting off the fireworks, J.C. went inside her house to go to sleep. She recalled that her father left that evening to go to work, while her other family members cleaned up after the party. J.C. and her brother entered the home around 1 or 2 o'clock in the morning and watched a cartoon on the couch before they both fell asleep. J.C. stated that she turned off the television, left her brother sleeping on the couch, and went to her bed to sleep. J.C. then recalled that she heard someone trying to open the door to her house, but the noise stopped. The noise

4

later resumed, the door opened, and J.C. identified the person who opened the door as Vega. J.C. testified that she knew it was Vega because he had received a haircut that day, and she identified Vega by his haircut. J.C. also recalled that Vega was "drunk" and wore blue plastic gloves that night. J.C. testified that Vega then took off his pants as well as her pants and held her arms down as he got on top of her as she lay in the bed. J.C. stated that Vega began to move "up and down" and inserted his "private part" inside of her "private part." According to J.C., Vega's actions made her feel "uncomfortable" and "shocked." After Vega finished, he stayed with her for a short period of time and then got off the bed and left. J.C. testified that she urinated after the encounter and that it burned to urinate. Later that morning, J.C. tried to wake up her brother to tell him what had happened, but her brother did not wake up. J.C. admitted that she never told her father about what had happened because she was scared. J.C. stated that she eventually told her friend from school about the abuse because she "wanted at least someone to know, just one person."

Several witnesses testified in Vega's defense. The first was Vega's niece, Cecilia Carreon, who claimed that Vega is actually J.C.'s father. Carreon testified that unidentified individuals attempted to make deals with Vega prior to trial, including an attempt to induce him to sign over a car title in exchange for J.C. dropping any charges against him. Carreon admitted that she was not present at the home during the New Year's Day 2012 party.

Vega also testified. According to Vega, he is J.C.'s biological father. Vega admitted to being at the same gathering on New Year's Eve, drinking beer and eating tamales with his wife, but he denied having any sexual encounter with J.C. Vega

5

testified that he thinks that J.C. was affected by learning that Vega was her biological father. Vega admitted to having a drinking problem.

After the State rested, it abandoned the indecency with a child charge, but moved forward with prosecution of the two counts of aggravated sexual assault. The jury found Vega guilty of aggravated sexual assault of a child as alleged in count one of the indictment (the New Year's Day 2012 incident) and acquitted him of aggravated sexual assault of a child as alleged in count three of the indictment. The trial court accepted the jury's verdict and sentenced Vega to eighteen years' imprisonment with the Texas Department of Criminal Justice, Institutional Division. This appeal followed.

## II.    SUFFICIENCY CHALLENGE

By his second and third issues, Vega asserts that the evidence is insufficient to sustain his conviction.[2]

### A. Standard of Review and Applicable Law

We apply the standard articulated in *Jackson v. Virginia* to determine whether the evidence is sufficient to support a criminal conviction. 443 U.S. 307, 319 (1979); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (holding that the *Jackson* standard of review is the "only standard" that should be applied in a sufficiency review). Under *Jackson*, we examine the evidence in the light most

---

[2] We note that by his second issue, Vega complains that the evidence is *factually* insufficient to support the verdict and the trial court's judgment, and by his third issue, Vega complains that the evidence is *legally* insufficient to support the verdict and the trial court's judgment. The Texas Court of Criminal Appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902 – 03, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, we will review Vega's claims of evidentiary sufficiency under a "rigorous and proper application" of the *Jackson* standard of review as legal sufficiency issues. *Id.* at 906–07, 912.

6

favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319.

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

Under a hypothetically correct jury charge, as authorized by the indictment in this case, Vega is guilty of aggravated sexual assault of J.C. if he intentionally or knowingly caused the penetration of J.C.'s sexual organ by Vega's sexual organ and that J.C. was younger than fourteen years of age at the time of the incident. *See* TEX. PENAL CODE ANN. § 22.021.

We defer to the jury's determinations of credibility and weight to be given to the evidence because jurors are the sole fact-finders. *See Brooks*, 323 S.W.3d at 899; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West, Westlaw through 2013 3d C.S.) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony. . . ."). Each fact need not point directly and independently to Vega's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, or party status, and circumstantial evidence alone can be sufficient to establish

7

guilt. *See Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012); *Hooper*, 214 S.W.3d at 13. The testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault. *See Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi, no pet.) (internal citations omitted). Courts give wide latitude to testimony given by child victims of sexual abuse. *Id.* The victim's description of what happened to her need not be precise, and she is not expected to express herself at the same level of sophistication as an adult. *Id.* Finally, there is no requirement that the victim's testimony be corroborated by medical or physical evidence. *Id.*

**B. Discussion**

Vega specifically argues that the State failed to prove that Vega is the one who committed the act of aggravated sexual assault. We disagree.

J.C. testified that she was able to identify Vega on the night in question because he had received a haircut earlier that day and that she was able to view Vega's haircut in the bedroom through the next door neighbor's lights that shined through her window, which illuminated Vega's head. Vega contends that this testimony is insufficient, however, because J.C. "did not testify that she saw [Vega's] facial features, or that she heard his voice, or that she recognized [Vega's] body structure." Furthermore, Vega argues that J.C. did not point out that Vega sported "unique hair" such as a "Mohawk" or "long pony tail" to distinguish him from others. Even assuming without deciding that J.C.'s identification-by-haircut was insufficient, Deputy Barron testified that during his investigation, J.C. identified Vega as the perpetrator not only by his haircut, but also by the "pink and black shirt" that he wore that night. Moreover, J.C. and her family lived in

8

a home next door to Vega's home, and while Vega's biological relationship to J.C. was questioned at trial, the evidence is clear that Vega was not a stranger to J.C. In our review of the sufficiency of the evidence, we are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of a witness's credibility and the weight to be given to her testimony. *See Brooks*, 323 S.W.2d at 899. Thus, considering the evidence of Vega's haircut as well as other circumstantial evidence surrounding his relationship with J.C. as neighbors and family members, we defer to the jury's determination that J.C. sufficiently identified Vega as the perpetrator.

Accordingly, after viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Vega was the perpetrator of the aggravated sexual assault of J.C. We overrule Vega's second and third issues.

### III.   HEARING ON VEGA'S MOTION FOR NEW TRIAL

By his first issue, Vega asserts that the trial court erred in allowing his motion for new trial to be overruled by operation of law when the motion raised matters that were not determinable from the record and Vega did not waive his attendance at said hearing.[3]

### A.  Standard of Review and Applicable Law

A hearing on a motion for new trial serves a two-fold purpose:   (1) permits the trial court to decide whether the cause shall be retried and (2) prepares a record for presenting issues on appeal in the event the motion is denied. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). Despite the recognition that the opportunity to

---

[3] We construe this issue as a complaint about the trial court's failure to hold a hearing on his motion for new trial and will analyze it as such.

prepare a record for appellate review makes a hearing on a motion for new trial a critical stage, the holding of such a hearing is not an absolute right and is not required when the matters raised in the motion for new trial are subject to being determined from the record. *See id.* However, a trial court abuses its discretion in failing to hold a hearing on a motion for new trial when that motion raises matters which are not determinable from the record, because to hold otherwise would deny the accused of meaningful appellate review. *See id.*

But even if a defendant has raised matters that are not determinable from the record, the defendant is not entitled to a hearing on his motion for new trial unless he establishes the existence of reasonable grounds showing that the defendant could be entitled to relief. *See id.* at 339 (citations omitted). Thus, as a prerequisite to a hearing when the grounds in the motion are based on matters not already in the record, the motion must be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim. *Id.* The affidavit need not establish a prima facie case, or even reflect every component legally required to establish relief. *Id.* Rather, the affidavit is sufficient if a fair reading of it gives rise to reasonable grounds in support of the claim. *Id.* However, conclusory affidavits and those affidavits unsupported by facts do not provide requisite notice of the basis for the relief claimed; thus, no hearing is required. *Id.*

We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion. *See id* at 339. We will reverse only when the trial court's ruling was so clearly wrong as to lie outside the zone of reasonable disagreement. *See id.* Our review is limited to the trial court's determination of whether a defendant has raised

10

grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. *Id.* at 340. If the trial court finds that a defendant has met the criteria, he has no discretion to withhold a hearing, and such a failure to hold a hearing after an affirmative finding amounts to an abuse of discretion. *Id.*

## B. Discussion

Here, Vega asserted two grounds in support of his motion for new trial: (1) that the verdict is contrary to law and evidence; and (2) that a new trial should be granted in the interest of justice. In further support of his motion, Vega attached four separate affidavits from Dulce Carreon, Margarita Bernal, Magda Karina Padilla, and B.V.[4]

Carreon and Bernal's affidavits related to the portion of the trial in which J.C. testified. Carreon and Bernal's affidavits state that they each witnessed a woman named Claudia Treviño enter the courtroom while J.C. testified and that Treviño coached J.C.'s testimony by the use of various head signals. This same issue was brought to the trial court's attention at trial. Specifically, Vega's trial counsel proferred the same substantive testimony, as told to him by Carreon and Bernal, regarding Treviño's alleged coaching of J.C.; Vega's trial counsel moved for a mistrial based upon these allegations. The trial court then made the following observation and ruling:

> . . . . I was looking and I didn't notice—notice this, . . . truthfully. I saw the witness sitting there. If there was a nodding of the head, it was not an overt—obvious overt and obvious coaching of the witness.
>
> If you'll notify me if she is here again, I'll instruct the bailiff to have her move so that she doesn't face the witness, but I'll accept your—that would be the testimony and the proffer . . . .

---

[4] Due to this affiant's age (12), we will identify him only by his initials.

11

But even if, assuming what you are saying is correct, that that's what they would say, the Motion for Mistrial is denied.

Because the issue of witness-coaching was already brought to the trial court's attention during trial and preserved through the trial court's ruling on Vega's motion for mistrial, we conclude that this matter is determinable from the record and was sufficiently addressed by the trial court. Accordingly, the trial court did not abuse its discretion by denying a hearing on Vega's motion for new trial based upon the Carreon and Bernal affidavits. *See* TEX. R. APP. P. 21.2 (noting that a motion for new trial is a prerequisite to presenting an issue on appeal only when necessary to adduce facts not in the record); *Smith*, 286 S.W.3d at 338.

The remaining two affidavits appear to attack J.C.'s credibility and character. Padilla's affidavit states that she is J.C.'s cousin and that even though J.C. is twelve years old, Padilla saw J.C. drink "a Jello shot at a party" and that she also saw a bottle of vodka inside J.C.'s bedroom. Padilla also stated that J.C. would "sneak out" of her house late at night and go to the neighbor's house. Padilla further asserted that J.C. told her about a teenaged boy in the neighborhood named George that J.C. wanted to engage in sexual intercourse. Padilla further stated in her affidavit that J.C. told her that J.C.'s friends thought that she was pregnant. B.V., who is also related to J.C., asserted in his affidavit that one day when he and J.C. walked to a neighborhood store, she pointed to a house where a teenaged boy lived. According to B.V., J.C. stated that the boy told her that whenever she came to his house, J.C. was supposed to "bring condoms" with her.

12

While the matters asserted in the Padilla and B.V. affidavits are not determinable from the record, in order to be entitled to a hearing on a motion for new trial, the defendant must establish the existence of reasonable grounds showing that the defendant could be entitled to relief. *See id.* at 339. After reviewing his motion for new trial and briefing on appeal, we do not see any arguments based upon the Padilla and B.V. affidavits that establishes the existence of reasonable grounds that would entitle Vega to a new trial. The Padilla and B.V. affidavits are attacks on complainant's reputation, which is inadmissible under the rules of evidence. *See* TEX. R. EVID. 412. Therefore, we hold that the trial court did not abuse its discretion by denying a hearing on Vega's motion for new trial based upon the Padilla and B.V. affidavits.

Vega's first issue is overruled.

## IV. BOLSTERING TESTIMONY

By his fourth issue, Vega asserts that the trial court reversibly erred by allowing testimony which improperly bolstered J.C.'s testimony.

### A. Standard of Review and Applicable Law

A trial court's decision on whether to admit evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (citations omitted). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc). The inquiry on appeal is whether the result was reached in an arbitrary or capricious manner. *Id.* We afford a trial court "great discretion" in its evidentiary decisions because "the trial court judge is in

13

a superior position to evaluate the impact of the evidence." *Id.* at 378–79. If we conclude that the trial court abused its discretion, we must then evaluate the error for harm. *See* TEX. R. APP. P. 44.2(b).

A direct opinion on the truthfulness of the child, from either a lay witness or an expert witness, is inadmissible. *Cueva v. State*, 339 S.W.3d 839, 867 (Tex. App.—Corpus Christi 2011, pet. ref'd) (citing *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993) (en banc)); *see Sessums v. State*, 129 S.W.3d 242, 247 (Tex. App.—Texarkana 2004, pet. ref'd); *Fisher v. State*, 121 S.W.3d 38, 41–42 (Tex. App.—San Antonio 2003, pet. ref'd). This type of testimony is inadmissible "because it does more than assist the trier of fact to understand the evidence or to determine a fact in issue; it decides an issue for the jury." *Fisher*, 121 S.W.3d at 41 (citing *Yount*, 872 S.W.2d at 709).

**B. Discussion**

Vega specifically complains about the following line of questioning to Investigator Lopez related to J.C.'s Child Advocacy Center interview:

| [Prosecutor]: | Have you ever watched, I guess, a videotaped interview where you kind of get a feeling that maybe something else is going on, that the child is lying? |
|---|---|
| [Investigator Lopez]: | Yes. |
| [Prosecutor]: | That has happened to you before? |
| [Investigator Lopez]: | Yes, sir. |
| [Prosecutor]: | Why was this different? |

[Defense Counsel]: I am going to object, Your Honor, for a determination on whether if someone is lying. It's not a factual question.

The Court: This is an ultimate jury issue. It invades the province of the issue. The objection is sustained.

[Prosecutor]: Investigator, there was—there is a reason that you decided to file charges in this case; is that correct?

[Investigator Lopez]: That's correct.

[Prosecutor]: What were those reasons?

[Investigator Lopez]: One, we had the consistency of the preliminary report with the forensic interview, what was told to the sexual assault examiner who was the one that conducts the sexual assault exam at the hospital, because there is also a statement made to her. That was consistent with—throughout the investigation.

The—plus the physical findings that were found on the sexual assault examination.

[Prosecutor]: So, Investigator, I guess you kind of jumped ahead there. There was another exam that she had?

[Investigator Lopez]: Yes.

[Prosecutor]: Is that—that was the one at the hospital that we talked about [?]

[Investigator Lopez]: That was done at the hospital, correct.

[Prosecutor]: Do you know who was [sic] the person that conducted that exam?

15

| | |
|---|---|
| [Investigator Lopez]: | Evonne Lopez [sic] is a forensic nurse at the Mission Hospital. |
| | . . . . |
| [Prosecutor]: | And would there be times in your cases where you flag—not flag, but tell Evonne to double check her stories or anything like that? |
| [Defense Counsel]: | I am going to object to the relevance, Your Honor. |
| The Court: | It's overruled.   Overruled. |
| [Prosecutor]: | In your experience would you ever have Evonne— |
| [Investigator Lopez]: | The—the—I would express concerns that I had with the investigation to her but, ultimately she is the one that determines what she finds and then she has to give her opinion because, of course, she has to back up her opinion in court if it needs to come to court.

Whenever she had concerns, she would express that to me. |
| [Defense Counsel]: | I am going to object to whatever another witness's concerns are, Your Honor, and—and what the report is and her testimony. |
| The Court: | Okay.   Let's move on here, Counsel. |
| | . . . . |
| [Prosecutor]: | Did you have any concerns when you took her to get—when you took [J.C.] to get interviewed by Evonne. |
| [Investigator Lopez]: | There weren't concerns regarding her statement, no.  I didn't have any.  She was pretty consistent throughout the interview so I didn't have anything—have any concerns for double checking her statements or anything like that. |

16

[Prosecutor]:　　　　　So you felt pretty confident taking her over there?

[Investigator Lopez]:　　Yes.

.  .  .  .

[Prosecutor]:　　　　　What specific, I guess, checks do you have before you just arrest somebody off the street?

[Investigator Lopez]:　　We have to—whenever we are doing the investigation, one of the—one of the main things or one of the priorities in the case is what the child is stating.

When—and—and over the years you see how a child will give statements, how consistent they are.　When they are talking, how they pause or what they think, or how they move their eyes, different body language.

And she was pretty thorough throughout.　We didn't see any—anything where we were concerned that she may be making things up, things of that nature.

When we spoke to her dad—because those are the ones that, you know, as parents they know what kind of child they have and so on and so forth.　So we'll talk to him, asked [sic] him about her behavior or things of that nature. One thing that he specifically said was that she doesn't lie.　She wouldn't make up something like that.

And I spoke to her after the interview just to confirm that everything that she said during the interview was—was true.　And she pretty much said, yes, it is true.　So it wasn't—I am just—I don't just take the forensic interview in [sic] itself.

17

The State contends that Vega did not properly preserve error for appellate review. We agree. As a general rule, the record must show that the complaint made on appeal was timely made to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" *See Weeks v. State*, 396 S.W.3d 737, 741 (quoting TEX. R. APP. P. 33.1).

Vega lodged three objections during the complained-of testimony. The first objection was based upon the complaint on appeal—that is, whether Investigator Lopez's testimony invaded the province of the jury to determine issues of truthfulness and credibility. This objection was sustained by the trial court. Vega's second objection was based on relevance grounds, and his third objection went to Investigator Lopez's testimony about what Nurse Garza's concerns were during her examination of J.C. Both of these objections were overruled. Vega also moved for a mistrial at the conclusion of the State's case-in-chief:

| [Defense Counsel]: | I would make, Judge, also a Motion for Mistrial based on the fact that they have elicited from the investigator and they tried through the counselor and they tried again with the—with the—the nurse, they tried to elicit whether this young lady was telling the truth or not and they—I think they invaded the jury's province that they determine the truth and it— |
|---|---|
| The Court: | For future trials that's grounds for a mistrial. |
| [Defense Counsel]: | I know there is case law on it, Judge. |
| The Court: | There is a case and I am familiar with the case. But it's grounds for mistrial for you to ask them that question. And the questions weren't answered and you properly objected and I ruled and I'll deny your Motion for Mistrial. |

18

Preservation of error is a systemic requirement of every appeal.   *Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009).   Of the three relevant objections lodged in this case, only the first was on the basis asserted on appeal.   Thus, after reviewing the record, we conclude that aside from Vega's first objection, which was sustained by the trial court by not allowing any opinion testimony regarding J.C.'s credibility, no other error was preserved for any other portion of Investigator Lopez's testimony now complained about on appeal.   *See* TEX. R. APP. P. 33.1; *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The point of error on appeal must comport with the objection made at trial.")   Vega's fourth issue is overruled.

## V.   EXCLUSION OF TESTIMONY

By his remaining two issues, Vega asserts that his Confrontation Clause and due process rights were violated when his counsel was prohibited from presenting a witness who would have testified about J.C.'s prior sexual knowledge.

### A.  Applicable Law and Standard of Review

The right of a defendant to present witnesses in his behalf is not absolute, and is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."   *Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984) (en banc) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).   We review a trial court's ruling on allowing a witness to testify for an abuse of discretion.   *See id.*

19

## B. Discussion

Vega sought to call Magda Karina Padilla as a witness at trial. In a hearing outside of the jury's presence, Vega elicited the following relevant testimony from Padilla as an offer of proof:

| | |
|---|---|
| [Defense Counsel]: | Magda, [J.C.] had several discussions with you about sex. |
| [Padilla]: | Yeah. |
| Q. | What—and what—what did he [sic] ask? |
| A. | Well, she asked me, once we were sitting in the front, and she told me she wanted to speak to me because I was the only girl like her age in there. And there is just boys so she would come to me. |

So then there was this one night that I was sitting in the front porch and she told me that if she could talk to me. So then I put my phone down and she was telling me that there was this little kid named George that was like on—it's our street, on the next street. She was telling me that he wanted like to have sex with her and that she didn't know what to do.

And I told her, like, ma, you are like 11 years old. You are a little girl. That shouldn't even like be—like you shouldn't worry about that. She is a little kid like—and I told her just stay away from him and that—because he—there is [sic] little kids, they do a lot of drugs there. So I told her like just keep away from that, that's all he wanted, like for her not to get close to him and that was it.

Like after that she didn't tell me anything else.

. . . .

20

The State objected that the testimony was inadmissible hearsay and in violation of rule of evidence 412. *See* TEX. R. EVID. 412 (Evidence of Previous Sexual Conduct in Criminal Cases). Vega responded by stating that the testimony is admissible "to refute the fact that [she] has never—doesn't know what sex is, she is innocent." Vega's counsel further argued that Padilla's testimony was for purposes of impeaching J.C.'s testimony. The trial court agreed with the State's objections and did not allow Padilla to testify.

Vega argues on appeal that the trial court abused its discretion by ruling in the State's favor on this issue because he was deprived of a "meaningful opportunity to present a complete defense." We disagree. Vega's right to call Padilla was not absolute and was subject to the rules of evidence. *See Keller*, 62 S.W.2d at 365. Here, the trial court did not abuse its discretion by sustaining the State's hearsay and rule 412 objections because both applied to this case.

First, hearsay is not admissible. *See* TEX. R. EVID. 802. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See id.* R. 801(d). Padilla's proffered testimony primarily centered on what J.C. told her regarding a boy named George wanting to have sexual intercourse with her. The trial court properly concluded that this amounted to hearsay and was thereby inadmissible.

Second, rule 412 states that reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime at all, and evidence of specific instances of an alleged victim's past sexual behavior is not admissible absent exceptions to the specific instances of conduct as outlined by the rule. *See id.* R. 412. Padilla's

21

proffered testimony falls into the category of testimony that rule 412 seeks to prevent, and no articulated exception to the admissibility of specific instances was argued by Vega. *See id.* at R. 412(B); *see also Montgomery v. State*, 415 S.W.3d 580, 584 (Tex. App.—Amarillo 2013, pet. ref'd) ("Rule 412 strives to balance a defendant's right to defend himself against the need to protect victims from undue public humiliation and ridicule."). Rather, Vega generally argued that he was denied an opportunity to present a complete defense. Accordingly, the trial court did not abuse its discretion by finding Padilla's testimony inadmissible under rule 412, as well.

Vega's fifth and six issues are overruled.

## VI. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
24th day of July, 2014.

22